No. 21-3031

# In the United States Court of Appeals for the Third Circuit

UNITED STATES OF AMERICA,

Appellee,

v.

ERIK MATTHEW HARRIS,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
No. 2:19-cr-00313 (Horan, J.)

## ANSWERING BRIEF FOR THE UNITED STATES

CINDY K. CHUNG
United States Attorney
Western District of Pennsylvania

LAURA S. IRWIN
Chief, Appellate Section
Western District of Pennsylvania

ADAM N. HALLOWELL
Assistant United States Attorney
Western District of Pennsylvania

KENNETH A. POLITE, JR.
Assistant Attorney General

LISA H. MILLER
Deputy Assistant Attorney General

ANDREW C. NOLL
Criminal Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
(202) 307-1982
Andrew.Noll@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF RELATED CASES ......................................................... 2

STATEMENT OF THE CASE .................................................................... 2

    I.    Procedural History ........................................................................ 2

    II.    Statement Of Facts ........................................................................ 2

        A.    Federal And Pennsylvania Regulation Of Marijuana ..................... 2

        B.    The Gun Control Act ........................................................... 3

        C.    Harris, A Near-Daily Marijuana User, Purchases Three Firearms ............................................................................. 4

        D.    Trial Proceedings ................................................................ 7

SUMMARY OF ARGUMENT ................................................................... 8

ARGUMENT .......................................................................................... 10

    I.    Harris's Second Amendment Challenge Lacks Merit .............................. 10

        A.    Standard Of Review .............................................................. 10

        B.    Section 922(g)(3) Complies With The Second Amendment ........ 10

            1.    Section 922(g)(3) Does Not Burden Conduct Protected By The Second Amendment .............................. 11

                a.    The Second Amendment Right Belongs To Law-Abiding, Responsible Citizens—Not Those Who Might Threaten Public Safety ............. 11

           b.      The Second Amendment Does Not Protect Gun Possession By Unlawful Drug Users .............. 14

           2.      Section 922(g)(3)'s Temporary Prohibition Reasonably Furthers An Important Government Interest ................................................................ 23

II.     Section 922(g)(3) Provides Fair Notice Of The Conduct It Prohibits ................................................................ 30

    A.     Standard Of Review ............................................... 30

    B.     The Statute Prohibits Individuals From Possessing Firearms While Regularly Using Unlawful Drugs ........................................... 30

    C.     The Statute Is Clear As Applied To Harris's Conduct ................. 33

    D.     Harris Cannot Advance A Facial Challenge And, Regardless, The Statute Is Facially Constitutional ............................. 35

III.    Harris's Guilty Plea Forecloses Any Sufficiency Challenge To His False Statement Convictions, Which Fails In Any Event ....................... 43

    A.     Standard Of Review ............................................... 43

    B.     Discussion ........................................................ 43

CONCLUSION ...................................................................... 51

CERTIFICATE OF COMPLIANCE ................................................. 52

CERTIFICATE OF SERVICE ...................................................... 53

# TABLE OF AUTHORITIES

## CASES

*Abramski v. United States,*
573 U.S. 169 (2014) ................................................................ 46

*Akron v. Akron Center for Reproductive Health, Inc.,*
462 U.S. 447 (1983) ................................................................ 36

*Aptheker v. Secretary of State,*
378 U.S. 500 (1964) ................................................................ 36

*Barbato v. Greystone Alliance, LLC,*
916 F.3d 260 (3d Cir. 2019) ................................................... 32

*Beers v. Attorney General,*
927 F.3d 150 (3d Cir. 2019) ................................................... 18

*Binderup v. Attorney General,*
836 F.3d 336 (3d Cir. 2016) (en banc) .......................... *passim*

*Broadrick v. Oklahoma,*
413 U.S. 601 (1973) ........................................................... 35, 36

*Bryan v. United States,*
524 U.S. 184 (1998) ................................................................ 47

*Cheek v. United States,*
498 U.S. 192 (1991) ................................................................ 46

*City of Chicago v. Morales,*
527 U.S. 41 (1999) ............................................................. 36, 37

*City of Mobile v. Bolden,*
446 U.S. 55 (1980) .................................................................. 19

*Class v. United States,*
138 S. Ct. 798 (2018) ............................................................. 44

*Colautti v. Franklin,*
439 U.S. 379 (1979) ................................................................ 36

*Dickerson v. New Banner Inst., Inc.,*
460 U.S. 103 (1983) ............................................................................. 4, 30

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ....................................................................... 11, 12, 14

*Drummond v. Robinson Twp.,*
9 F.4th 217 (3d Cir. 2021) .......................................................................... 13

*Expressions Hair Design v. Schneiderman,*
137 S. Ct. 1144 (2017) ............................................................................... 38

*Folajtar v. Attorney General,*
980 F.3d 897 (3d Cir. 2020) ..................................................... 12, 20, 21, 22

*Grayned v. City of Rockford,*
408 U.S. 104 (1972) ................................................................................... 42

*Heller v. District of Columbia,*
670 F.3d 1244 (D.C. Cir. 2011) ................................................................. 13

*Holder v. Humanitarian Law Project,*
561 U.S. 1 (2010) ........................................................................... 33, 35, 36

*Holloway v. Attorney General,*
948 F.3d 164 (3d Cir. 2020) ................................................................. 10, 21

*In re Rogers,*
66 P.2d 1237 (Cal. Dist. Ct. App. 1937) ................................................... 18

*Johnson v. United States,*
576 U.S. 591 (2015) ....................................................................... 37, 38, 42

*Kanter v. Barr,*
919 F.3d 437 (7th Cir. 2019) ................................................................ 13, 22

*Kolender v. Lawson,*
461 U.S. 352 (1983) ................................................................................... 36

*Lange v. California,*
141 S. Ct. 2011 (2021) ............................................................................... 24

*Manning v. Caldwell for City of Roanoke,*
930 F.3d 264 (4th Cir. 2019) (en banc) ..................................................... 41

*Marks v. United States,*
    430 U.S. 188 (1977) ................................................................ 20

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010) ................................................................ 11

*Nat'l Rifle Ass'n of Am. v. ATF,*
    700 F.3d 185 (5th Cir. 2012) .................................................. 13

*Parker v. Levy,*
    417 U.S. 733 (1974) ................................................................ 35

*People v. Garcia,*
    595 P.2d 228 (Colo. 1979) ..................................................... 15

*Rehaif v. United States,*
    139 S. Ct. 2191 (2019) ........................................................... 42

*Schall v. Martin,*
    467 U.S. 253 (1984) ................................................................ 23

*Schrader v. Holder,*
    704 F.3d 980 (D.C. Cir. 2013) ............................................... 29

*Sisley v. DEA,*
    11 F.4th 1029 (9th Cir. 2021) ................................................. 19

*Skilling v. United States,*
    561 U.S. 403 (2010) ..................................................... 30, 39, 41

*Standing Akimbo, LLC v. United States,*
    141 S. Ct. 2236 (2021) ........................................................... 20

*State v. Kerner,*
    107 S.E. 222 (N.C. 1921) ........................................................ 15

*State v. Shelby,*
    2 S.W. 468 (Mo. 1886) ..................................................... 13, 15

*Turner Broad. Sys., Inc. v. FCC,*
    512 U.S. 622 (1994) ................................................................ 29

*United States v. Augustin,*
    376 F.3d 135 (3d Cir. 2004) ........................................... *passim*

*United States v. Bergrin,*
  650 F.3d 257 (3d Cir. 2011) ........................................................ 45

*United States v. Boyd,*
  999 F.3d 171 (3d Cir. 2021) ................................... 14, 21, 26, 42

*United States v. Bramer,*
  832 F.3d 908 (8th Cir. 2016) ............................................... 31, 36

*United States v. Cannon,*
  No. 22-1569, 2022 WL 2063436 (3d Cir. June 8, 2022) ................ 3

*United States v. Carter,*
  669 F.3d 411 (4th Cir. 2012) ........................................................ 26

*United States v. Carter,*
  750 F.3d 462 (4th Cir. 2014) ............................................... *passim*

*United States v. Chapman,*
  7 F.3d 66 (5th Cir. 1993) .............................................................. 50

*United States v. Cook,*
  970 F.3d 866 (7th Cir. 2020) ............................... 31, 36, 38, 39

*United States v. Davis,*
  139 S. Ct. 2319 (2019) .................................................................. 39

*United States v. DeLaurentis,*
  230 F.3d 659 (3d Cir. 2000) ........................................................ 45

*United States v. Dugan,*
  657 F.3d 998 (9th Cir. 2011) ................................................11, 15, 18

*United States v. Edwards,*
  540 F.3d 1156 (10th Cir. 2008) .................................................. 31

*United States v. Garcia,*
  479 F.2d 322 (5th Cir. 1973) ........................................................ 48

*United States v. Hasson,*
  26 F.4th 610 (4th Cir. 2022) ........................................................ 38

*United States v. Hoffert,*
  949 F.3d 782 (3d Cir. 2020) .............................................10, 30, 43

*United States v. Jackson,*
   280 F.3d 403 (4th Cir. 2002) ..................................................................... 32, 34

*United States v. Joseph,*
   730 F.3d 336 (3d Cir. 2013) ............................................................................ 44

*United States v. Karani,*
   984 F.3d 163 (1st Cir. 2021) ........................................................................... 47

*United States v. Lacerda,*
   958 F.3d 196 (3d Cir. 2020) ............................................................................ 46

*United States v. Lanier,*
   520 U.S. 259 (1997) .................................................................................... 30, 41

*United States v. Lundy,*
   No. 20-6323, 2021 WL 5190899 (6th Cir. Nov. 9, 2021) (unpublished) ................. 31

*United States v. Maher,*
   108 F.3d 1513 (2d Cir. 1997) .......................................................................... 43

*United States v. Marzzarella,*
   614 F.3d 85 (3d Cir. 2010) ........................................................ 10, 18, 23, 26

*United States v. McLaughllin,*
   82 F. App'x 741 (3d Cir. 2003) ....................................................................... 43

*United States v. Monroe,*
   233 F. App'x 879 (11th Cir. 2007) .................................................................. 31

*United States v. Nat'l Dairy Prods. Corp.,*
   372 U.S. 29 (1963) ........................................................................................... 35

*United States v. Patterson,*
   431 F.3d 832 (5th Cir. 2005) ........................................................................... 31

*United States v. Pearson,*
   818 F. App'x 382 (5th Cir. 2020) .................................................................... 49

*United States v. Perez,*
   280 F.3d 318 (3d Cir. 2002) ...................................................................... 46, 48

*United States v. Purdy,*
   264 F.3d 809 (9th Cir. 2001) ....................................................... 31, 32, 34, 47

*United States v. Richard,*
  350 F. App'x 252 (10th Cir. 2009) ................................................. 11

*United States v. Seay,*
  620 F.3d 919 (8th Cir. 2010) ................................................. 11, 18

*United States v. Sholley-Gonzalez,*
  996 F.3d 887 (8th Cir. 2021) ................................................. 42

*United States v. Smukler,*
  991 F.3d 472 (3d Cir. 2021) ................................................. 46

*United States v. Squires,*
  440 F.2d 859 (2d Cir. 1971) ................................................. 49, 50

*United States v. Turnbull,*
  349 F.3d 558 (8th Cir. 2003) ................................................. 34

*United States v. Viscome,*
  144 F.3d 1365 (11th Cir. 1998) ................................................. 43

*United States v. Voigt,*
  89 F.3d 1050 (3d Cir. 1996) ................................................. 50

*United States v. Williams,*
  553 U.S. 285 (2008) ................................................. 30, 40, 42

*United States v. Willis,*
  992 F.2d 489 (4th Cir. 1993) ................................................. 44

*United States v. Wilson,*
  436 F.2d 122 (3d Cir. 1971) ................................................. 50

*United States v. Wilson,*
  503 U.S. 329 (1992) ................................................. 31

*United States v. Yancey,*
  621 F.3d 681 (7th Cir. 2010) ................................................. *passim*

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
  455 U.S. 489 (1982) ................................................. 33, 35, 37

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) ................................................. 42

*Washington v. Sobina*,
  475 F.3d 162 (3d Cir. 2007) ............................................................................................ 43

## STATUTES

18 U.S.C. § 922(a)(6) ................................................................................................ 2, 43, 46

18 U.S.C. § 922(g)(3) ................................................................................................ 1, 2, 3, 10

18 U.S.C. § 924(e) .......................................................................................................... 37

18 U.S.C. § 3231 ............................................................................................................ 1

21 U.S.C. § 801 ............................................................................................................. 2

21 U.S.C. § 812 ............................................................................................................. 2

28 U.S.C. § 1291 ........................................................................................................... 1

35 Pa. Stat. § 780-104 .................................................................................................. 3

35 Pa. Stat. § 780-113 .................................................................................................. 3

35 Pa. Stat. § 10231.101 .............................................................................................. 3

35 Pa. Stat. § 10231.303 .............................................................................................. 3

720 Ill. Comp. Stat. 5/24-3.1 ...................................................................................... 16

Ala. Code § 13A-11-72 ................................................................................................ 16

Ark. Code Ann. § 5-73-309 ......................................................................................... 16

Cal. Penal Code § 29800 .............................................................................................. 16

Colo. Rev. Stat. § 18-12-203 ....................................................................................... 16

Comprehensive Drug Abuse Prevention and Control Act of 1970,
  Pub. L. No. 91-513, 84 Stat. 1236 ........................................................................... 2

D.C. Code § 22-4503 .................................................................................................... 16

Del. Code Ann. tit. 11, § 1448 .................................................................................... 16

Firearm Owners' Protection Act,
Pub. L. No. 99-308, 100 Stat. 449 (1986) ........................................ 4

Fla. Stat. § 790.25 ............................................................................ 16

Ga. Code Ann. § 16-11-129 .............................................................. 16

Gun Control Act of 1968,
Pub. L. No. 90-618, 82 Stat. 1213 ............................................ 3, 17

Haw. Rev. Stat. § 134-7 ................................................................... 16

Idaho Code Ann. § 18-3302 ............................................................. 16

Ind. Code § 35-47-1-7 ..................................................................... 16

Kan. Stat. Ann. § 21-6301 ............................................................... 16

Ky. Rev. Stat. Ann. § 237.110 ......................................................... 16

Mass. Gen. Laws ch. 140, § 129B ................................................... 16

Md. Code Ann., Pub. Safety, 5-133 ................................................. 16

Minn. Stat. § 624.713 ...................................................................... 16

Mo. Rev. Stat. § 571.070 ................................................................. 16

N.C. Gen. Stat. § 14-404 ................................................................. 16

N.H. Rev. Stat. Ann. § 159:3 ........................................................... 16

N.J. Stat. Ann. § 2C:58-3 ................................................................ 16

Nev. Rev. Stat. § 202.360 ................................................................ 16

Ohio Rev. Code Ann. § 2923.13 ...................................................... 16

R.I. Gen. Laws § 11-47-6 ................................................................. 16

S.C. Code Ann. § 16-23-30 .............................................................. 16

S.D. Codified Laws § 23-7-7.1 ......................................................... 16

W. Va. Code § 61-7-7 ...................................................................... 16

## LEGISLATIVE MATERIALS

114 Cong. Rec. 21,809 (1968) .......................................................... 4, 16

H.R. Rep. No. 99-495 (1986) .............................................................. 4

S. Rep. No. 88-1340 (1964) ................................................................ 3

S. Rep. No. 89-1866 (1966) ....................................................... 4, 14, 19

S. Rep. No. 98-583 (1984) ................................................................ 20

## OTHER AUTHORITIES

81 Fed. Reg. 53,688 (Aug. 12, 2016) ....................................... 15, 19, 24

Richard J. Bonnie & Charles H. Whitebread, II, *The Forbidden Fruit and the Tree of Knowledge: An Inquiry into the Legal History of American Marijuana Prohibition*, 56 Va. L. Rev. 971 (1970) ......................................... 18, 19

Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early Modern Origins of Gun Control*, 73 Fordham L. Rev. 487 (2004) ................................ 12

Lana Harrison & Joseph Gfroerer, *The Intersection of Drug Use and Criminal Behavior: Results From the National Household Survey on Drug Abuse*, 38 Crime & Delinquency 422 (1992) ...................................................... 25

David F. Musto, *The American Experience with Stimulants and Opiates*, 2 Persp. on Crime & Just. 51 (1997-1998) ........................................... 17

Office of Justice Programs, *Bureau of Justice Statistics Special Report: Drug Use and Dependence, State and Federal Prisoners, 2004* (2006) .......................... 24

3 Bernard Schwartz, *The Roots of the Bill of Rights* (1980) ................................ 12

Robert E. Shalhope, *The Armed Citizen in the Early Republic*, 49 Law & Contemp. Probs. 125 (1986) ......................................................... 15

Substance Abuse and Mental Health Services Administration, *National Survey on Drug Use and Health Report: Illicit Drug Use among Persons Arrested for Serious Crimes* (2005) .......................................................... 24

U.S. Treasury Dep't, *State Laws Relating to the Control of Narcotic Drugs and the Treatment of Drug Addiction* (1931) ........................................................ 18

Michael Vitiello, *Marijuana Legalization, Racial Disparity, and the Hope for Reform*, 23 Lewis & Clark L. Rev. 789 (2019) ............................................... 17

Evelyn H. Wei *et al.*, *Teasing Apart the Developmental Associations Between Alcohol and Marijuana Use and Violence*, 20 Journal of Contemporary Criminal Justice 166 (2004) ....................................................................... 25

1A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (5th ed. Apr. 2022 update) ..................................................................... 43

## STATEMENT OF JURISDICTION

Defendant-appellant Erik Harris appeals his convictions. The district court entered judgment on October 27, 2021, Appx.2, 20,[1] and Harris timely filed a notice of appeal on November 1, 2021, Appx.1. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether 18 U.S.C. § 922(g)(3), which prohibits an "unlawful user" of a controlled substance from possessing firearms, is constitutional because it does not burden Second-Amendment-protected conduct or because it reasonably furthers the government's important interests in ensuring public safety and preventing crime. Appx.40-44 (raised); Appx.9 (ruling).

2.      Whether Section 922(g)(3) provides fair notice as applied to Harris's conduct and, if so, whether Harris nevertheless can advance a facial vagueness claim. Appx.33-40 (raised); Appx.9 (ruling).

3.      Whether by pleading guilty to making false statements in connection with firearms purchases, Harris waived any claim that the trial evidence would be insufficient to prove those counts. Appx.203-05 (plea).

---

[1] "Appx." refers to the Appendix, "Br." refers to Harris's opening brief, and "Vol.III." refers to Harris's videorecorded police interview, filed as Appendix Volume III. The timestamp citations for the interview differ from those identified in the district court because the video was split into five files below.

**STATEMENT OF RELATED CASES**

The government is not aware of any related case or proceeding.

**STATEMENT OF THE CASE**

## I.    Procedural History

Following a conditional guilty plea in the United States District Court for the Western District of Pennsylvania, Harris was convicted on three counts of possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3), and three counts of making false statements in connection with the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6). Appx.2. The district court sentenced Harris to six months of imprisonment, to be followed by three years of supervised release. Appx.3-4.

## II.    Statement Of Facts

### A.    Federal And Pennsylvania Regulation Of Marijuana

In the Controlled Substances Act, Congress established a comprehensive federal system to regulate the trafficking of drugs that are subject to abuse. *See* 21 U.S.C. § 801. The Act classifies substances that have a "potential for abuse" in five schedules; Schedule I drugs have "a high potential for abuse," no "currently accepted medical use in treatment in the United States," and lack "accepted safety for use" under medical supervision. *Id.* § 812(b)(1)-(5). Since the Act's enactment, Congress has placed marijuana in Schedule I, *see* Pub. L. No. 91-513 § 202(c), 84 Stat. 1236, 1249 (Schedule I(c)(10)); 21 U.S.C. § 812(c), and "it is beyond dispute that the use and possession of

marijuana—even where sanctioned by a State—remains a violation of federal law." *United States v. Cannon*, No. 22-1569, 2022 WL 2063436, at *1 (3d Cir. June 8, 2022) (per curiam).

Pennsylvania likewise criminalizes the possession of any amount of marijuana and, as under federal law, classifies marijuana as a Schedule I drug. *See* 35 Pa. Stat. § 780-104(1)(iv). Pennsylvania prohibits the possession of any controlled substance, including "the possession of a small amount of marihuana" (defined as 30 grams) "only for personal use." *Id.* § 780-113(a)(16), (a)(31). Pennsylvania law does permit the use of marijuana for medicinal purposes, but only in limited circumstances and when certified by a physician. *See id.* § 10231.303; *see generally id.* § 10231.101 *et seq.*

## B. The Gun Control Act

Federal law has long restricted firearm possession by certain categories of individuals. Relevant here, 18 U.S.C. § 922(g)(3) prohibits any person who "is an unlawful user of or addicted to" a controlled substance from possessing firearms. Congress enacted that provision's precursor as part of the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, following a multi-year inquiry into violent crime that included "field investigation and public hearings," S. Rep. No. 88-1340, at 1-2 (1964).

Although the Act was not intended to eliminate firearm ownership "by law-abiding citizens for lawful purposes," 82 Stat. 1213-14, one of the Act's aims was "to keep firearms out of the hands of presumptively risky people," including felons, the mentally ill, fugitives from justice, and unlawful drug users, *Dickerson v. New Banner Inst.,*

*Inc.*, 460 U.S. 103, 112 n.6 (1983).  To address the rise in crime and gun violence and to reduce "the likelihood that [firearms would] fall into the hands of the lawless or those who might misuse them," S. Rep. No. 89-1866, at 1 (1966), Congress sought to restrict firearm access by "individuals who by their previous conduct or mental condition or irresponsibility have shown themselves incapable of handling a dangerous weapon in the midst of an open society," 114 Cong. Rec. 21,809-10 (1968) (statement of Rep. Tenzer).

The statute initially prohibited an individual who "is an unlawful user of or addicted to marihuana or any depressant or stimulant drug" from receiving firearms. 82 Stat. 1220-21.  In 1986, Congress amended the statute to refer generally to unlawful users of "any controlled substance," as that term is defined by the Controlled Substances Act, *see* Firearm Owners' Protection Act, Pub. L. No. 99-308, § 102(5)(B), 100 Stat. 449, 452 (1986), in order to "modernize[ ] the prohibition" and capture hallucinogenic drugs and other substances that fell outside the then-existing definition, H.R. Rep. No. 99-495, at 23 (1986).

### C.    Harris, A Near-Daily Marijuana User, Purchases Three Firearms

1.    By his own account, as of April 2019, Harris had used marijuana for more than six years.   Vol.III.0:50-0:55, 4:14-4:19.   Harris used marijuana frequently, estimating that during the prior year he smoked the drug "every day," "every three days," or "five out of seven" days a week. *Id.* at 4:20-4:23, 5:07-5:20, 38:35-38:51.

Between February 25 and March 14, 2019, Harris purchased three firearms from a federally licensed firearms dealer in Rochester, Pennsylvania. Appx.198. During each transaction, Harris completed Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Form 4473, a firearms transaction record. Appx.199. Question 11.e of that Form asked: "Are you an unlawful user of[,] or addicted to[,] marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance[?]" *Id.*; Vol.III.35:35-36:51. Following that question was a statement in bold print: "Warning: The use or possession of marijuana remains unlawful under federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside." Appx.199.[2] In each instance, Harris answered "No," representing that he was not an "unlawful user" of marijuana. *Id.*

On February 25, Harris purchased a Rock Island .45-caliber pistol, and answered that he was not an unlawful marijuana user. Appx.198-99; Vol.III.36:51-36:55. Harris then purchased a second firearm, a Smith & Wesson .40-caliber pistol, on March 8, 2019, and again answered "No" to the question about marijuana use. Appx.199; *see* Vol.III.40:06-40:20.

Five days later, on the evening of March 13, Harris and a friend, Jaemere Scott, celebrated Scott's mother's birthday at Scott's residence and, later, at a bar.

---

[2] The current version, in which Question 11.e is renumbered, is available at: https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download.

Vol.III.24:40-25:15.  Harris smoked marijuana and got "really drunk" and upon arriving at the bar he was unable to find on his person or in his car the Smith & Wesson pistol he purchased just five days earlier.  *Id.* at 23:16-23:18, 25:42-27:20.

The next morning, March 14, Harris purchased an identical Smith & Wesson pistol.  Appx.199; Vol.III.30:11-30:27.  Despite having smoked marijuana the night before, Harris again answered "No" to Question 11.e, representing that he was not an unlawful marijuana user.  Appx.199; Vol.III.41:48-42:05.  That same day, Harris reported the first Smith & Wesson pistol missing, Vol.III.30:35-31:20, and Beaver Falls, Pennsylvania police officers recovered the pistol on Scott's person, *see* Appx.53, 161.  Scott was a convicted felon with an active warrant.  Appx.53; *see* Indictment, *United States v. Scott*, No. 19-cr-315 (W.D. Pa. Oct. 9, 2019).

2.     On April 18, 2019, Harris participated in a recorded interview with ATF and Beaver Falls Police Department investigators.  After waiving his *Miranda* rights, Harris admitted that he regularly used marijuana.  Vol.III.0:55-1:44, 4:14-4:23.  Harris, by then a junior in college, explained that he had used marijuana since his freshman year of high school.  *Id.* at 0:50-0:55, 4:14-4:19.  He provided various estimates of the frequency of his use during the prior year—including "every day," "every three days," and "five out of seven days" a week—and reported smoking marijuana earlier that day, before the interview.  *Id.* at 4:20-5:20, 38:35-38:51.  Harris also said he was once robbed while trying to buy marijuana.  *Id.* at 4:31-4:42.  He admitted knowing that Scott was a convicted felon who could not possess firearms, and said that when he saw Scott being

arrested on March 14, he was "about to go smoke" with his girlfriend.  *Id.* at 27:38-28:02, 51:19-52:23.

Asked about his answers to Question 11.e on the purchase forms, Harris at first said he answered "No" because he does not consider himself addicted to marijuana. Vol.III.36:51-36:55.  When confronted with the fact that the question asked, broadly, whether he was an "unlawful user" of marijuana, however, Harris conceded: "yes, I am an 'unlawful user of' because I do use it [marijuana] today."  *Id.* at 36:56-37:37.  Asked whether he had been truthful in his responses to the question, Harris said, "I guess I would say no, but it depends which way you look at it."  *Id.* at 38:51-39:09.  He acknowledged that he responded with a "half-truth" and "didn't answer honestly, for the most part."  *Id.* at 40:05-40:20, 42:00-42:04.

### D.    Trial Proceedings

A federal grand jury indicted Harris on three counts of unlawfully possessing a firearm and three counts of making false statements in connection with the acquisition of a firearm.  Appx.25-31.  Before trial, Harris moved to dismiss the indictment, contending that Section 922(g)(3) is unconstitutionally vague, requiring the dismissal of all charges, and that Section 922(g)(3) violates the Second Amendment and the Commerce Clause of the Constitution.  *See* Appx.32-51.  Following a hearing, the district court orally denied Harris's motion.  Appx.172.

Harris conditionally pleaded guilty, reserving his right to pursue a direct appeal "limited to the issue of his motion to dismiss the Indictment and argument(s) in support

thereof." Appx.202-05, 208-11. The district court sentenced Harris to six months of imprisonment, to be followed by three years of supervised release. Appx.3-4, 252.

## SUMMARY OF ARGUMENT

1.     This Court should reject Harris's as-applied attack on Section 922(g)(3)'s constitutionality under the Second Amendment. Those who regularly use illegal drugs by definition are not law-abiding, responsible members of the community. Section 922(g)(3)'s prohibition fits squarely within the historical justification this Court has recognized for disarming unvirtuous citizens who could not be trusted to possess arms responsibly. And even if Harris were correct that his conduct implicates the Second Amendment, Section 922(g)(3)'s temporary prohibition satisfies intermediate scrutiny. Scholarly research, prior judicial decisions, and common sense each confirm that preventing those who regularly use drugs—including marijuana—from possessing firearms reasonably furthers the government's important interests in preventing crime and ensuring public safety. The Second Amendment does not compel Congress to allow Harris to simultaneously choose both gun possession and drug abuse, and this Court should join every court of appeals to have considered the question and uphold Section 922(g)(3) under the Second Amendment.

2.     Harris's vagueness challenge likewise lacks merit. Section 922(g)(3) provides fair notice and presents no risk of arbitrary enforcement. The courts of appeals, including this Court, have had no difficulty construing the statute, which encompasses those who engage in regular drug use contemporaneous with their

possession of firearms.  Harris cannot show that the statute is unconstitutionally vague as applied to his conduct.  To the contrary, Harris's admission to regularly using marijuana at the same time he possessed firearms—one of which he lost while high on marijuana, and immediately replaced—places his conduct in the heartland of Section 922(g)(3)'s prohibition.  Because the statute provides fair notice as applied to his own conduct, Harris is foreclosed from advancing a facial vagueness claim premised on the possible application of the statute to other, hypothetical circumstances.  And even if a facial challenge were available, it would fail given the circuit consensus about the statute's application.   Any uncertainty about Section 922(g)(3)'s application to a hypothetical defendant's conduct in a marginal case does not render the statute unconstitutionally vague on its face.

3.    Although he attempts to challenge the sufficiency of the evidence to prove his false statement convictions, Harris waived any such challenge by pleading guilty and forgoing a trial.  Harris's sufficiency claim, moreover, is not one he advanced (or could have advanced) in his motion to dismiss the indictment.  In any event, the evidentiary record presented in response to the motion to dismiss clearly demonstrated that Harris knew his representations about not being an unlawful marijuana user were false.

# ARGUMENT

## I.    Harris's Second Amendment Challenge Lacks Merit

### A.    Standard Of Review

Harris's constitutional challenge is reviewed *de novo*.  *United States v. Hoffert*, 949 F.3d 782, 787 (3d Cir. 2020).

### B.    Section 922(g)(3) Complies With The Second Amendment

This Court has adopted a "two-part test" for analyzing whether "laws unlawfully infringe the Second Amendment." *Holloway v. Attorney General*, 948 F.3d 164, 169 (3d Cir. 2020).   First, the party challenging the law must "identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member," and then "present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class." *Binderup v. Attorney General*, 836 F.3d 336, 347 (3d Cir. 2016) (en banc) (Ambro, J.).   If the challenger successfully does so, "the burden shifts to the Government" to demonstrate that the law satisfies intermediate scrutiny.  *Id.* at 347, 356; *see also United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010).

18 U.S.C. § 922(g)(3) prohibits "any person" who "is an unlawful user of or addicted to any controlled substance" from possessing a firearm.  The statute, this Court has explained, reaches persons who "have engaged in regular use" of drugs "over a period of time proximate to or contemporaneous with the possession of the firearm." *United States v. Augustin*, 376 F.3d 135, 138-39 (3d Cir. 2004).  The Second Amendment

"does not require Congress to allow [Harris] to simultaneously choose both gun possession and drug abuse," *United States v. Yancey*, 621 F.3d 681, 687 (7th Cir. 2010) (per curiam), and this Court should join every court of appeals to have considered the question and uphold Section 922(g)(3) under the Second Amendment, *see United States v. Carter*, 750 F.3d 462, 470 (4th Cir. 2014) (*Carter II*); *Yancey*, 621 F.3d at 682; *United States v. Seay*, 620 F.3d 919, 925 (8th Cir. 2010); *United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011); *United States v. Richard*, 350 F. App'x 252, 260 (10th Cir. 2009).

1.    **Section 922(g)(3) Does Not Burden Conduct Protected By The Second Amendment**

a.    **The Second Amendment Right Belongs To Law-Abiding, Responsible Citizens—Not Those Who Might Threaten Public Safety**

The Second Amendment protects an individual right to keep and bear arms, a right which the Supreme Court has identified as belonging to "law-abiding, responsible citizens." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). "Like most rights," however, "the right secured by the Second Amendment is not unlimited." *Id.* at 626. Consistent with that understanding, the Court in *Heller* provided a non-exhaustive list of "presumptively lawful regulatory measures," including "longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626-27 & n.26. The Court explained that "nothing in [its] opinion should be taken to cast doubt on" such measures, *id.* at 626; *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality op.) ("repeat[ing] those assurances").

This Court has explained that the prohibitions *Heller* identified "comport with the Second Amendment because they affect individuals or conduct unprotected by the right to keep and bear arms." *Binderup*, 836 F.3d at 343 (Ambro, J.). As the Court has recognized, "[m]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry." *Id.* at 348 (quotations omitted) (collecting literature); *see also Folajtar v. Attorney General*, 980 F.3d 897, 902 (3d Cir. 2020). The Amendment incorporates a common-law tradition permitting restrictions on citizens who are not "law-abiding" and "responsible," *Heller*, 554 U.S. at 635, and "does not preclude" laws disarming "unvirtuous citizens," *Binderup*, 836 F.3d at 348 (Ambro, J.) (quotations omitted). That understanding is reflected in the background of the Second Amendment itself. *Id.* at 349. *Heller* identified as among the Second Amendment's "highly influential" "precursors" the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents, 554 U.S. at 603-04, which asserted that "no law shall be passed for disarming the people or any of them unless for crimes committed, or real danger of public injury from individuals," 3 Bernard Schwartz, *The Roots of the Bill of Rights* 662, 665 (1980).

Thus, legislatures have long disarmed groups deemed unfit to possess weapons. Some laws disarmed persons considered outside the political community of the time, such as loyalists in Revolutionary America. *See* Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early Modern Origins of Gun Control*, 73 Fordham L. Rev. 487, 506-08 (2004). It also has long been understood that the government can keep guns out of the

hands of those more likely to be dangerous or irresponsible—such as children and those who abuse substances like alcohol. *See, e.g.*, *Nat'l Rifle Ass'n of Am. v. ATF*, 700 F.3d 185, 205 (5th Cir. 2012) (laws "targeting minors under 21 are an outgrowth of an American tradition of regulating certain groups' access to arms for the sake of public safety"); *State v. Shelby*, 2 S.W. 468, 468-69 (Mo. 1886) (applying state prohibition on carrying weapon "when under the influence of intoxicating drink").

But exclusions from the right to bear arms "need not mirror limits that were on the books in 1791," *Folajtar*, 980 F.3d at 910 (quotations omitted), or "boast a precise founding-era analogue," *Nat'l Rifle Ass'n*, 700 F.3d at 196. "After all," in *Heller* the Court described prohibitions on "felons and the mentally ill" as presumptively valid and "longstanding" despite the fact that those prohibitions are of "mid-20th century vintage." *Id.* A court thus should ask whether "a particular *type* of regulation has been a longstanding exception to the right," and not whether challenged laws "replicate precise historical models." *Drummond v. Robinson Twp.*, 9 F.4th 217, 226-27 (3d Cir. 2021) (quotations omitted); *accord, e.g.*, *Heller v. District of Columbia*, 670 F.3d 1244, 1275 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (courts can "reason by analogy from history and tradition"); *Kanter v. Barr*, 919 F.3d 437, 464-65 (7th Cir. 2019) (Barrett, J., dissenting) ("present-day judgments" may be "'lineal descendants' of historical laws").

**b.    The Second Amendment Does Not Protect Gun Possession By Unlawful Drug Users**

Harris contends (Br.10-20) that unlawful marijuana users can be distinguished from those traditionally excluded from possessing firearms. But Section 922(g)(3)'s prohibition fits squarely within the historical justification of disarming unvirtuous citizens who could not be entrusted to possess arms responsibly.

i.    Relying on the same historical record this Court found persuasive in *Binderup*, every court of appeals to consider the question has found that disarming unlawful drug users is constitutionally permissible. Unlawful drug users are among the "unvirtuous citizens" who fall outside the Second Amendment's scope and whom the legislature constitutionally may disarm. *Binderup*, 836 F.3d at 348 (Ambro, J.).

The persistent use of substances the legislature has deemed unlawful is incompatible with an individual's claim to be a "law-abiding" and "responsible" citizen. *Heller*, 554 U.S. at 635. Legislatures are not limited to disarming those who have already been convicted of a crime, *see United States v. Boyd*, 999 F.3d 171, 186 (3d Cir. 2021), and Congress reasonably determined that unlawful drug users are among "the lawless" who "might misuse" firearms, S. Rep. No. 89-1866, at 1.

Firearm possession by those who are frequently in an impaired state because of drug use is not conducive to public safety. Marijuana, among other effects, causes disinhibition, impaired judgment, disorganized thinking, and can cause "euphoria, perceptual and other cognitive distortions, hallucinations, and mood changes,"

particularly in higher doses.  81 Fed. Reg. 53,688, 53,693-94 (Aug. 12, 2016).  Courts have long upheld bars on the possession of firearms by intoxicated individuals.  *See, e.g.*, *Shelby*, 2 S.W. at 468-69; *State v. Kerner*, 107 S.E. 222, 225 (N.C. 1921); *People v. Garcia*, 595 P.2d 228, 230 (Colo. 1979).  And like those intoxicated with alcohol, those who regularly use drugs are "more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms," *Yancey*, 621 F.3d at 685, particularly during periods they are "under the influence of controlled substances," *Dugan*, 657 F.3d at 999.  Harris is no exception: while under the influence of marijuana and alcohol, he lost control of his firearm—which resulted in the gun falling into a convicted felon's hands.

Individuals who regularly use unlawful drugs similarly pose a "danger of public injury."  3 Schwartz, *supra* at 665.  Firearm possession was tied to public virtue in part because individuals were expected to bear arms not only in defense of themselves but also for the public good, in defense of liberty and their government.  *See* Robert E. Shalhope, *The Armed Citizen in the Early Republic*, 49 Law & Contemp. Probs. 125, 128-31 (1986).  The state therefore could disarm those "elements within the[ ] society" who had no "[i]nterest in preserving the public[ ] [p]eace."  *Id.* at 130; *see Kerner*, 181 N.C. 574 at 225 (acknowledging common law prohibition on carrying firearms "in a manner calculated to inspire terror").  Consistent with that historical justification for disarmament, the Gun Control Act aims to restrict access by those "who by their previous conduct" have "shown themselves incapable of handling a dangerous weapon

in the midst of an open society." 114 Cong. Rec. 21,809-10 (statement of Rep. Tenzer). And, as demonstrated below, *infra* at 23-26, there is "a strong link between drug use and violence." *Carter II*, 750 F.3d at 467. Drug users, as a result of the illegal nature of their activity, are more likely to have hostile encounters with law enforcement and are more likely to engage in criminal activity (including to fund their drug habit)—presenting acute dangers of crime and violence that firearms only exacerbate. *Id.* at 469. In this way, disarming "habitual drug abusers is analogous to disarming felons." *Yancey*, 621 F.3d at 684.

Indeed, the recognition that unlawful drug use is incompatible with firearm possession is reflected across United States jurisdictions today; more than half of states and the District of Columbia have statutes prohibiting unlawful drug users or drug addicts from possessing firearms, often coupled with similar prohibitions on those who abuse alcohol.[3] Other jurisdictions may well have deemed such statutes unnecessary in light of the federal prohibition at issue in this case. Such legislation "demonstrate[s]

---

[3] *See* Ala. Code § 13A-11-72(b); Ark. Code Ann. § 5-73-309(7), (8); Cal. Penal Code § 29800(a)(1); Colo. Rev. Stat. § 18-12-203(1)(e), (f); Del. Code Ann. tit. 11, § 1448(a)(3); D.C. Code § 22-4503(a)(4); Fla. Stat. § 790.25(2)(b)(1); Ga. Code Ann. § 16-11-129(b)(2)(E), (J); Haw. Rev. Stat. § 134-7(c)(1); Idaho Code Ann. § 18-3302(11)(e); 720 Ill. Comp. Stat. 5/24-3.1(a)(3); Ind. Code § 35-47-1-7(5); Kan. Stat. Ann. § 21-6301(a)(10); Ky. Rev. Stat. Ann. § 237.110(4)(a), (d), (e); Md. Code Ann., Pub. Safety, 5-133(b)(4), (5); Mass. Gen. Laws ch. 140, § 129B(1)(iii); Minn. Stat. § 624.713(1)(10)(iii); Mo. Rev. Stat. § 571.070(1)(2); Nev. Rev. Stat. § 202.360(1)(c); N.H. Rev. Stat. Ann. § 159:3(b)(3); N.J. Stat. Ann. § 2C:58-3(c)(2); N.C. Gen. Stat. § 14-404(c)(3); Ohio Rev. Code Ann. § 2923.13(A)(4); R.I. Gen. Laws § 11-47-6; S.C. Code Ann. § 16-23-30(A)(1); S.D. Codified Laws § 23-7-7.1(3); W. Va. Code § 61-7-7(a)(2), (3).

that Congress was not alone in concluding that habitual drug users are unfit to possess firearms." *Yancey*, 621 F.3d at 684.

ii.    Harris cannot meaningfully distinguish marijuana users from the historical class of citizens who constitutionally may be disarmed.  Indeed, when Congress enacted the Gun Control Act, it singled out marijuana—the only drug listed by name in the statute, *see* 82 Stat. 1220-21—as of particular concern.  Although the legislative history provides no express reason for Congress's focus on marijuana, both scholarly literature, *infra* at 23-26, and common sense indicates the likely explanation: marijuana usage impairs individuals and is significantly linked to crime.

Harris contends (Br.14-15) that barring marijuana users from firearm possession is invalid because no similar prohibition existed at the time of ratification.  There was no need for such a firearm prohibition (or any similar curtailment of rights) at the time of the founding, however, because drugs were not widely used as intoxicants in the United States until the late nineteenth and early twentieth centuries.[4]  *See, e.g.*, David F. Musto, *The American Experience with Stimulants and Opiates*, 2 Persp. on Crime & Just. 51, 63 (1997-1998).  Prohibitions on narcotic and marijuana use accordingly did not emerge until around the 1880s and the early twentieth century, respectively.  *See* U.S. Treasury Dep't, *State Laws Relating to the Control of Narcotic Drugs and the Treatment of Drug Addiction*

---

[4] Harris emphasizes (Br.14, 16) the colonial use of hemp and historic uses of cannabis in medicinal products, but even the source he cites suggests that marijuana was not used as an intoxicant at the founding.  Michael Vitiello, *Marijuana Legalization, Racial Disparity, and the Hope for Reform*, 23 Lewis & Clark L. Rev. 789, 792 (2019).

1-9 (1931) (describing development of state-level laws); Richard J. Bonnie & Charles H.

Whitebread, II, *The Forbidden Fruit and the Tree of Knowledge: An Inquiry into the Legal History of American Marijuana Prohibition*, 56 Va. L. Rev. 971, 985 (1970); *id.* at 1010 (noting Utah passed first state prohibition on cannabis sale or possession in 1915). And as those laws emerged, so too did associated firearms regulations. *See, e.g.*, *In re Rogers,* 66 P.2d 1237 (Cal. Dist. Ct. App. 1937) (applying state ban on firearm possession by drug addicts).

As courts have recognized, Section 922(g)(3) "has the same historical pedigree" and is just as longstanding as the federal bans on firearm possession by the mentally ill and by felons that also were enacted as part of the Gun Control Act and have been "repeatedly upheld by numerous courts since *Heller.*" *Seay*, 620 F.3d at 925; *see Yancey*, 621 F.3d at 683; *Dugan*, 657 F.3d at 999.[5] Indeed, as this Court has acknowledged, for historical reasons, Section 922(g)(4)'s prohibition on firearm possession by the mentally ill similarly lacked a direct analogue at the time of ratification because "such laws were not necessary during the eighteenth century." *Beers v. Attorney General*, 927 F.3d 150, 157-58 (3d Cir. 2019), *judgment vacated as moot*, 140 S. Ct. 2758 (2020). The absence of a

---

[5] Harris misrepresents (Br.9) the Court's discussion in *Marzzarella*, contending that the Court described Section 922(g)(3) as not among longstanding, presumptively lawful measures. In *Marzzarella*, the Court observed that no restriction on substance abusers existed at ratification, but stressed that "it is not clear that pre-ratification presence is the only avenue for a categorical exception." 614 F.3d at 93.

direct analogue at the founding does not render Section 922(g)(3) *per se* unconstitutional. *See Folajtar*, 980 F.3d at 910.

Harris also claims (Br.16-17) that some appeals to criminalize marijuana were framed in prejudicial terms, invoking Mexican emigration to the United States. But the state-level movements to criminalize marijuana were not uniform. Many states, including New York, whose legislation "was the precursor of nationwide legislation," were motivated to prohibit marijuana use to "keep addicts from switching to it as a substitute for the drugs"—opiates, cocaine, and alcohol—"which had become much more difficult to obtain" due to federal legislation. Bonnie & Whitebread, *supra*, at 1016, 1019. Regardless, whatever may have motivated a particular state legislature to criminalize marijuana, when enacting Section 922(g)(3)'s precursor Congress was focused on the combination of guns and unlawful drugs—including, although not limited to, marijuana. *Cf. City of Mobile v. Bolden*, 446 U.S. 55, 74 (1980) (plurality op.) ("[P]ast discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful."). Congress acted out of an acute concern for promoting public safety and preventing firearms from "fall[ing] into the hands of the lawless or those who might misuse them." S. Rep. No. 89-1866, at 1.[6]

---

[6] Harris's contentions (Br.17-18) about the determination to place marijuana on Schedule I in the 1970s also is irrelevant because the Gun Control Act, passed several years earlier, referenced marijuana without tying it to the drug's scheduling. In any event, the Executive Branch consistently has denied various requests to reschedule or decontrol marijuana. *See, e.g., Sisley v. DEA*, 11 F.4th 1029, 1033 (9th Cir. 2021) (discussing recent denial); 81 Fed. Reg. 53,688 (earlier denial). Harris also points out

Pointing to efforts at the state and federal level to decriminalize marijuana use, Harris suggests (Br.19-20) that marijuana users are distinct from users of other controlled substances. But Congress has made the opposite judgment, electing to prohibit users of any federally controlled substance from possessing firearms. And Congress has not enacted any of the various proposed bills that Harris identifies. Federal law thus "still flatly forbids" the "possession, cultivation, or distribution of marijuana," subject only to a narrow research exception. *Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236, 2237 (2021) (statement of Thomas, J., respecting the denial of certiorari). State laws and unenacted federal proposals provide no sound basis for exempting unlawful marijuana users from Section 922(g)(3)'s prohibition.

iii.    Reprising historical arguments that this Court has rejected, and relying on various dissenting opinions, Harris attempts (Br.10-13) to recast the Second Amendment's scope, claiming that limitations on the right to keep and bear arms were tied to dangerousness. But this Court explained in *Folajtar* that it had already "repudiated three times"—now four, including *Folajtar*—a "narrow focus on dangerousness." *Folajtar*, 980 F.3d at 907.[7]

---

(Br.15) that Section 922(g)(3)'s precursor prohibited firearm receipt, but not possession. But there is no dispute that Congress expressed concern about drug users obtaining firearms, and Congress amended the law in 1986 to close an unintended loophole resulting from the statute's prohibition on receipt only. *See* S. Rep. No. 98-583, at 12 (1984) (describing "deficient" discrepancy).

[7] Harris erroneously claims that this Court has not conducted an analysis under *Marks v. United States*, 430 U.S. 188 (1977), to determine whether Judge Ambro's opinion in

Harris also contends (Br.11, 13) that this Court's decisions in *Holloway* and *Boyd* suggest that unvirtuousness is equated with dangerousness, or that a historical right tied to virtue is somehow limited in application to Section 922(g)(1)'s felony prohibition. The Court's analysis in those decisions, however, merely reflects that the class of unvirtuous citizens certainly encompasses (even if it is not limited to) those considered dangerous. In *Holloway*, although this Court explained that a crime might be considered serious if it presents "a potential for danger," it affirmed the virtue-based understanding *Binderup* adopted. 948 F.3d at 173-74 & n.11; *see also Folajtar*, 980 F.3d at 907 (noting *Holloway* rejected a "narrow focus on dangerousness"). And in *Boyd*, this Court observed that while it had not limited Section 922(g)(1)'s reach "to only those felons who were presumptively dangerous," the "baseline determination" that someone is dangerous "no doubt *suffices* to remove a person from the scope of the Second Amendment's protections." 999 F.3d at 186 (emphasis added). Nothing in those decisions suggests that the historically barred class is limited to those considered dangerous.

Regardless, even if dangerousness were the applicable historical justification for barring firearm possession, Harris's challenge would fail. The same characteristics that qualify regular drug users as unvirtuous—including their frequent impairment and the strong connection between drug use and crime—undoubtedly qualify those individuals

---

*Binderup* is controlling. This Court conducted that analysis in *Holloway*. *See* 948 F.3d at 170-72.

as "persons who [have] demonstrated that [they] would present a danger to the public if armed." *Binderup*, 836 F.3d at 369 (Hardiman, J., concurring); *see also, e.g.*, *Kanter*, 919 F.3d at 466 (Barrett, J., dissenting) (identifying Section 922(g)(3) as a permissible, "narrowly defined categorical ban[ ]" furthering Congress' "goal of reducing violent crime" (quotations omitted)).

iv.    Finally, Harris claims (Br.18-19) that particularized facts about his background distinguish him from a typical marijuana user.  But while several aspects of Harris's background are laudable, there is no escaping the fact that one of Harris's firearms, while in his possession, wound up in the hands of a felon under circumstances that were almost certainly tied to Harris's substance abuse.  Even accepting Harris's explanation for those events, Harris at best misplaced a dangerous firearm on an evening during which he was smoking marijuana and got "really drunk," and was unable to determine whether he had lost the firearm at a crowded bar, in his vehicle, or elsewhere.  Harris, moreover, previously had been robbed when attempting to purchase marijuana, a circumstance that is likely to escalate when one or more participants are carrying a firearm.  Harris cannot "distinguish his circumstances from those of persons in the historically barred class," *Binderup*, 836 F.3d at 347 (Ambro, J.), and for that reason alone his Second Amendment claim necessarily fails, *Folajtar*, 980 F.3d at 901.

### 2. Section 922(g)(3)'s Temporary Prohibition Reasonably Furthers An Important Government Interest

Even if Harris were correct that he can assert a Second Amendment right, Section 922(g)(3)'s temporary prohibition satisfies intermediate scrutiny.

a. If an individual demonstrates that his conduct falls within the Second Amendment's scope, the burden shifts to the government to demonstrate a "substantial or important interest" the law furthers. *Marzzarella*, 614 F.3d at 98. "[T]he fit between the challenged regulation and the asserted objective" must be "reasonable, not perfect," and the law need not "be the least restrictive means of serving the [government's] interest." *Id.*

Harris does not dispute the government's "legitimate and compelling" interest in ensuring public safety and "protecting the community from crime." *Schall v. Martin*, 467 U.S. 253, 264 (1984) (quotations omitted). And scholarly research, prior judicial decisions, and common sense confirm that Section 922(g)(3)'s prohibition on firearm possession during the period a person unlawfully uses controlled substances reasonably protects the public by keeping firearms out of the hands of those who are chronically impaired and pose a heightened risk of violence or crime.

As explained—and as the facts of this case show—marijuana is an intoxicant that causes a variety of psychotropic impairments that are likely to adversely affect a person's ability to safely possess firearms. As this Court has observed, the government has "an important and compelling" interest in "promoting public safety by 'preventing

armed mayhem.'" *Binderup*, 836 F.3d at 353 (Ambro, J.); *cf. Lange v. California*, 141 S. Ct. 2011, 2031 (2021) (Roberts, C.J., concurring) (noting "the 'paramount' government interest in public safety"). Mixing guns with many of marijuana intoxication's most common effects—including disinhibition, impaired judgment, disorganized thinking, perceptual and cognitive distortions, hallucinations, and mood changes, *see* 81 Fed. Reg. at 53,693-94—obviously is incompatible with that important government interest.

Studies further demonstrate a strong association between drug use and violent and criminal behavior.[8] A comprehensive U.S. government analysis of drug abuse among arrestees, published in 2005, found that more than 60% of adults arrested for serious violent or property offenses (including murder, rape, robbery, aggravated assault, and burglary) had used illicit drugs in the year prior to their arrest, compared to just 13.6% of those not arrested. Substance Abuse and Mental Health Services Administration, *National Survey on Drug Use and Health Report: Illicit Drug Use among Persons Arrested for Serious Crimes* 1 (2005); *see* Appx.69. Similarly, in 2004, more than half of state and federal inmates reported using drugs in the month before their offense, and 32% of state and 26% of federal inmates committed their offenses while under the influence of drugs. Office of Justice Programs, *Bureau of Justice Statistics Special Report: Drug Use and Dependence, State and Federal Prisoners, 2004* 1 (2006); *see* Appx.72.

---

[8] In the district court the government filed only excerpts of certain studies, as some publications are subject to copyright protection. If requested, full copies can be filed under seal.

Studies confirm that marijuana is similar to other illegal drugs in that regard. Marijuana was the most commonly used drug by arrestees in the 2005 National Survey on Drug Use and Health; 46.5% of those arrested for serious crimes had used marijuana within the prior year. Appx.71. Marijuana also was the most commonly used drug by state and federal inmates: 40.3% of state and 36.2% of federal inmates reported using marijuana in the month before their offense, and at least 14% of each group reported being under the influence of marijuana at the time of their offense. Appx.73. A leading study from 1992 found, after controlling for other variables (like age, race, or education), that the use of substances, including marijuana, was "significantly related to criminal behavior" and that rates of criminal behavior are higher among those who use both alcohol and marijuana (without other illicit drugs) than those who use alcohol alone. Lana Harrison & Joseph Gfroerer, *The Intersection of Drug Use and Criminal Behavior: Results From the National Household Survey on Drug Abuse*, 38 Crime & Delinquency 422, 431-35 (1992); *see* Appx.87-91. And one study found that "at age 18, frequent marijuana users were 11 times more likely" to engage in violence. Evelyn H. Wei *et al.*, *Teasing Apart the Developmental Associations Between Alcohol and Marijuana Use and Violence*, 20 Journal of Contemporary Criminal Justice 166, 176 (2004); *see* Appx.99.

Together, these studies demonstrate a reasonable connection between the government's important interest in preventing crime and furthering public safety and a temporary prohibition on unlawful drug users—including marijuana users—possessing guns. *See Carter II*, 750 F.3d at 467 (finding, based on many of the same studies, "a

strong link between drug use and violence"). Common sense supports that assessment. Because of the unlawful nature of their activities, drug users are more likely than law-abiding citizens to have dangerous confrontations, particularly if guns are involved, with drug dealers, law enforcement officers, and others. Some unlawful drugs users may resort to criminal acts to obtain the economic means to purchase drugs. *See e.g.*, Appx.72 (finding that "17% of State and 18% of Federal prisoners committed their crime to obtain money for drugs"). In short, "[v]iolence may erupt from a variety of situations involving illicit drugs." Appx.110.

Finally, the fit between the statute and the governmental interest is no more burdensome "than is reasonably necessary." *Marzzarella*, 614 F.3d at 98. Section 922(g)(3)'s prohibition is temporary (imposed while an individual is an unlawful drug user), and therefore less intrusive than a categorical ban. *See Boyd*, 999 F.3d at 188 (acknowledging same for Section 922(g)(8)'s temporary prohibition). As other circuits have observed, Section 922(g)(3)'s restriction is "less onerous than those affecting felons and the mentally ill," *Yancey*, 621 F.3d at 686-87, and "tailored" to "cover only the time period during which [Congress] deemed such persons to be dangerous," *United States v. Carter*, 669 F.3d 411, 419 (4th Cir. 2012).

b.    Harris's response (Br.22-29)—that studies show no reasonable fit between Section 922(g)(3) and a prohibition on individuals he describes as "recreational user[s] of marijuana having no prior felony record"—fails a matter of fact and law.

i.    Factually, as explained, the studies specifically address the relationship between marijuana and criminal activity. Contrary to Harris's claim (Br.24-25), several studies expressly focused on the general population—non-incarcerated individuals like Harris who may have no prior criminal history. *See* Appx.84-85, 96, 111-12. Harris significantly mischaracterizes (Br.23-24) the Harrison study, claiming that it found a limited association between drug use and criminal behavior in the general population. The study's authors made the introductory observation Harris references when canvassing prior literature and explaining that "[t]he relationship between drug use and violent crime *has not been* well researched." Appx.84 (emphasis added). And, in fact, the study ultimately found the opposite: each of the study's models showed that the use of various drugs were "about equally as important predictors of criminal behavior." Appx.91. Those who used marijuana in the prior year, in particular, were up to three times more likely to be booked for a violent or property offense. Appx.91-92. One of the most compelling findings, the authors stressed, was "the robustness of the drug use-criminal behavior relationship" precisely because it "is strong *even in the general population*." Appx.94 (emphasis added).

Harris likewise misconstrues the Wei study (Br.26), which he claims found that marijuana users are not prone to violence. To the contrary, that study found that among 18-year-old men, "frequent marijuana users were 11 times more likely" to "engage in violence" and that, overall, "frequent use of alcohol and marijuana were both significantly associated with violence." Appx.95, 99-100. As the Fourth Circuit has

explained, the study "provides additional evidence that marijuana use and violence coincide" and, "far from undercutting the government's position, provides it with strong support." *Carter II*, 750 F.3d at 468.[9]

To be sure, some of the cited studies are not specific to marijuana or involve individuals who had been incarcerated. *See, e.g.*, Appx.72 (inmates); Appx.103-04 (probationers). But those studies simply buttress the association that has been observed with respect to marijuana and other drugs alike: individuals who use illegal drugs are more likely to end up committing crimes or engaging in violent behavior. The government's proffered studies are far from the "off-point" analyses that three judges found insufficient in *Binderup* to demonstrate a connection between disarming state-law misdemeanants and public safety. *See* 836 F.3d at 354-55 (Ambro, J.).

Harris points out (Br.23-24) that some studies caution that their analyses do not prove that drug use *causes* crime. *See* Appx.94, 110. But regardless of a causal relationship, the studies consistently demonstrate that "drug use and criminal behavior are highly correlated." Appx.94. The Wei study, for example, found insufficient evidence of a *causal* relationship but nevertheless determined that frequent marijuana use and violence were "significantly associated" and "tend to co-occur in certain

---

[9] Harris contends (Br.31) that *Carter* "lumped all drug users together" and did not require the government to make a particularized demonstration linking marijuana to violence. But the Fourth Circuit found that even if "a particularized demonstration is necessary"—a question the court did not decide—studies "amply demonstrate a connection between marijuana use specifically and violence." *Carter II*, 750 F.3d at 467.

individuals" because "both are influenced by shared risk factors and/or an underlying tendency toward deviance." Appx.95, 101. That drug use cannot be shown to directly cause an individual to engage in crime does not undermine Congress' justifiable concern that individuals who unlawfully use drugs are more likely to engage in crime. *See Carter II*, 750 F.3d at 469 (rejecting same argument, which "assumes, incorrectly, that Congress may not regulate based on correlational evidence").

ii.    Legally, Harris's narrow focus on individuals he describes as "otherwise law-abiding" "recreational marijuana users" also is flawed. Although empirical evidence undermines his claim, Harris in any event ignores that intermediate scrutiny does not demand an exact fit between the government's interest and the means taken to achieve that interest. Congress may need to make predictive judgments about the risk of dangerous behavior, and "[s]ound policymaking often requires legislators to forecast future events" by making "deductions and inferences for which complete empirical support may be unavailable." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994) (opinion of Kennedy, J.). "[T]he legislature is far better equipped than the judiciary to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks." *Schrader v. Holder*, 704 F.3d 980, 990 (D.C. Cir. 2013) (quotations omitted).

To protect the public, Congress reasonably chose a categorical firearm ban for unlawful drug users, without exceptions for certain controlled substances (or substances that a state, unlike Pennsylvania, chooses to exempt from prosecution). The Supreme

Court has "recognized and given weight" to Congress' "broad prophylactic purpose" in enacting the Gun Control Act. *Dickerson*, 460 U.S. at 118. This Court should do the same.

## II. Section 922(g)(3) Provides Fair Notice Of The Conduct It Prohibits

### A. Standard Of Review

Harris's constitutional challenge is reviewed *de novo*. *Hoffert*, 949 F.3d at 787.

### B. The Statute Prohibits Individuals From Possessing Firearms While Regularly Using Unlawful Drugs

1. The Due Process Clause bars enforcement of a criminal statute on vagueness grounds only if the statute "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). A statute is not void for vagueness simply because its application may be unclear at the margins, *id.* at 306, or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306. The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

Every court of appeals to have considered the question has rejected a vagueness challenge to Section 922(g)(3). *See United States v. Patterson*, 431 F.3d 832, 836 (5th Cir. 2005); *United States v. Lundy*, No. 20-6323, 2021 WL 5190899, at *5-*6 (6th Cir. Nov. 9, 2021) (unpublished); *United States v. Cook*, 970 F.3d 866, 872-78 (7th Cir. 2020); *United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016) (per curiam); *United States v. Purdy*, 264 F.3d 809, 811-13 (9th Cir. 2001); *United States v. Edwards*, 540 F.3d 1156, 1162 (10th Cir. 2008); *United States v. Monroe*, 233 F. App'x 879, 881 (11th Cir. 2007) (per curiam). This Court should do the same.

2.    The courts of appeals, including this Court, have had no difficulty construing Section 922(g)(3)'s reach. Several aspects of the statutory language make clear that to violate the statute "one must be an unlawful user at or about the time he or she possessed the firearm"—meaning that the person must "have engaged in regular use" of drugs "over a period of time proximate to or contemporaneous with the possession of the firearm." *Augustin*, 376 F.3d at 138-39.

*First*, the statute's use of the present tense "is" indicates that Congress intended to preclude only current drug users from possessing firearms. "Congress' use of a verb tense is significant in construing statutes," *United States v. Wilson*, 503 U.S. 329, 333 (1992), and, as this Court has acknowledged, Section 922(g)(3)'s "use of the present tense was not idle," *Augustin*, 376 F.3d at 138. By requiring an individual to be, presently, an unlawful user, "Congress intended to cover unlawful drug use at or about

31

the time of the possession of the firearm" but not use that is "remote in time or an isolated occurrence." *Id.*; *accord Yancey*, 621 F.3d at 687.

*Second*, the statute focuses on the defendant's status as a drug "user" concurrent with his firearm possession, rather than on the defendant's use of a drug. *Cf. Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 267-68 (3d Cir. 2019) (distinguishing as "critical" Congress' varying use of verb and noun forms). Accordingly, "Section 922(g)(3) does not forbid possession of a firearm *while unlawfully using* a controlled substance," but rather "prohibits *unlawful users* of controlled substances (and those addicted to such substances) from possessing firearms." *United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002). The government is not required "to prove that [the defendant] was smoking marijuana at the very same time that he possessed the firearm." *Augustin*, 376 F.3d at 138 n.5.

*Third*, to be categorized as an unlawful *user* and not simply one who has, at some point, used a controlled substance, a defendant must use drugs "with some regularity"—that is, "to have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm." *Id.* at 139 & n.6. "[A] common sense meaning of the phrase clearly includes" drug use that is "consistent, prolonged, and contemporaneous with" the firearm possession. *Purdy*, 264 F.3d at 812 (quotations omitted). A "single use" of a controlled substance, by contrast, without more, is insufficient to show that a defendant is an unlawful user. *Augustin*, 376 F.3d at 138-39.

### C.    The Statute Is Clear As Applied To Harris's Conduct

Harris cannot prevail on a vagueness challenge simply by positing hypothetical situations in which the statute's application might be ambiguous.  *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 & n.7 (1982).  Rather, as the Supreme Court has long held, Harris must demonstrate that the law fails to provide clear warning that his own conduct was proscribed.  *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010).  "Vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."  *Hoffman Estates*, 455 U.S. at 495 n.7 (brackets and quotations omitted).

Harris cannot show that Section 922(g)(3) provided no fair notice that his conduct was prohibited.  Indeed, Harris's own statements to law enforcement demonstrate that he regularly used marijuana during a period of time contemporaneous with his possession of firearms—placing his conduct in the heartland of Section 922(g)(3)'s prohibition.

Harris purchased the guns at issue during a less-than-three-week period.  And during his interview a month later, he estimated using marijuana "every day," "five out of seven days," or "every three days" over the prior year.  Vol.III.4:20-4:23, 5:07-5:20, 38:35-38:51.  Any one of those estimates suffices to show that Harris "engaged in regular use" of a controlled substance contemporaneous with his possession of the firearms.  *Augustin*, 376 F.3d at 139.  Harris even admitted to smoking marijuana the very night he claims to have misplaced his first Smith & Wesson pistol.  Vol.III.25:14-

25:21.  And when officers pointed out that the ATF forms Harris signed asked whether he was an unlawful user of marijuana (and not just addicted to the substance), Harris admitted that he was "an unlawful user" because he "do[es] use [marijuana] today." *Id.* at 36:56-37:37.  This "is not a borderline case." *Jackson*, 280 F.3d at 406.

Harris responds (Br.50) that he sometimes stopped smoking marijuana entirely for months at a time.  But during the interview Harris clarified that those breaks were *not* within the past year, when he smoked frequently.   Vol.III.4:52-5:20, 38:18-38:50.  Regardless, the relevant period for his unlawful possession convictions is the February to March 2019 period during which, as just explained, Harris admitted to consistently using marijuana—including to being high on marijuana the night when he possessed and then claims to have lost a firearm.

Finally, Harris suggests that his circumstances differ from other cases where as-applied challenges were rejected.  To the contrary, the frequency of Harris's marijuana usage—nearly every day during the preceding year—is similar to that of defendants who courts have found had sufficient notice of Section 922(g)(3)'s scope.  *See, e.g.*, *United States v. Turnbull*, 349 F.3d 558, 561-62 (8th Cir. 2003) (use "for an extended period of time (one year)" including "a couple times within the week" when "firearms were found"), *vacated*, 543 U.S. 1099 (2005); *Jackson*, 280 F.3d at 404 (use the evening of possession and "twice a day for 'some years'"); *Purdy*, 264 F.3d at 810-11 (use every other month, including "two days before" and "on the day" gun was seized).

**D.    Harris Cannot Advance A Facial Challenge And, Regardless, The Statute Is Facially Constitutional**

Harris principally seeks to advance (Br.37-49) a facial vagueness challenge.  But Harris is foreclosed from challenging Section 922(g)(3) facially and, in any event, such a challenge lacks merit.

1.    Outside the First Amendment context, the Supreme Court has not typically permitted "[a] plaintiff who engages in some conduct that is clearly proscribed" to challenge the law's vagueness "as applied to the conduct of others."  *Humanitarian Law Project*, 561 U.S. at 18-19 (quotations omitted); *see Hoffman Estates*, 455 U.S. at 495 n.7; *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973) (collecting cases).  Vague laws pose a unique concern in the First Amendment context because "vagueness may in itself deter constitutionally protected" conduct and chill speech.  *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 36 (1963).  Where First Amendment freedoms are not implicated, however, a challenger to whom "a statute clearly applies may not successfully challenge it for vagueness."  *Parker v. Levy*, 417 U.S. 733, 756 (1974).

a.    Harris incorrectly contends (Br.37-38) that the Supreme Court has permitted facial vagueness challenges to statutes that generally "implicat[e] fundamental rights" and that he can facially challenge Section 922(g)(3) because the statute implicates the Second Amendment.  As an initial matter, the conduct Section 922(g)(3) proscribes falls outside the protection afforded by the Second Amendment, and thus does not implicate the right.  *See supra* at 14-22.  Nor does Harris identify any case suggesting that

a defendant to whom a statute's application is clear may advance a facial vagueness challenge in light of Second Amendment concerns. To the contrary, the courts of appeals have rejected such efforts. *See Cook*, 970 F.3d at 877; *Bramer*, 832 F.3d at 909.

The cases Harris identifies (Br.37-38) do not hold otherwise. In one of those cases, *Aptheker v. Secretary of State*, 378 U.S. 500 (1964), the Supreme Court applied the *overbreadth* doctrine, *id.* at 508, 514; *see Broadrick*, 413 U.S. at 612 (recognizing *Aptheker* applied overbreadth)—an analytically distinct basis to challenge a statute with a more relaxed standard for who may advance it, *see, e.g.*, *Humanitarian Law Project*, 561 U.S. at 19-20. The Court in *Aptheker* had no occasion to consider whether the challenged provision was unconstitutionally vague.

In the remaining cases, including one in which the Court did invoke the First Amendment, *see Kolender v. Lawson*, 461 U.S. 352, 358 (1983), the Court did not suggest, much less hold, that the challengers could attack a statute that "clearly proscribed" their own conduct. Instead, the Court referenced the risk that the challenged statutes might inhibit constitutionally protected rights in the course of substantively evaluating whether the degree of ambiguity in each statute was constitutionally permissible, *Colautti v. Franklin*, 439 U.S. 379, 390-91 (1979); *Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 427, 451-52 (1983); *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999) (plurality op.). And in each case, the Court sustained a facial challenge seemingly on the basis that statute was so vague as to preclude clear application to any set of facts. *See, e.g., Kolender*, 461 U.S. at 358 (statute "contains no standard" and vests "virtually

complete discretion" in police); *Morales*, 527 U.S. at 71 (Breyer, J., concurring) (ordinance unconstitutional "because the policeman enjoys too much discretion in *every* case"). Those cases thus provide no basis for rejecting the Court's repeated admonition that one "who engages in some conduct that is clearly proscribed" cannot complain of a law's vagueness "as applied to the conduct of others." *Hoffman Estates*, 455 U.S. at 495.

b.    Harris next contends (Br.38-40) that the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), abrogated the traditional rule that where a statute clearly proscribes the defendant's conduct, the defendant may not advance a facial vagueness challenge outside the First Amendment context. *Johnson* did not abrogate that rule.

In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act of 1984 (ACCA) was impermissibly vague. *See* 576 U.S. at 595-606. That clause, however, presented unique vagueness concerns. The ACCA imposes an enhanced sentence on a defendant convicted of a firearms offense who has three or more prior convictions for either a "serious drug offense" or a "violent felony," and the statute's residual clause defines "violent felony" to include a crime that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Court had interpreted that clause to require application of a "categorical approach" under which courts were required to determine whether "an idealized ordinary case of the crime" carried a "'serious potential risk of physical

injury.'"  576 U.S. at 593, 604.  Because the Court perceived "uncertainty about how much risk it takes for a crime to qualify as a violent felony," *and* "[b]ecause 'the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect,'" the Court concluded that the residual clause "offer[ed] significantly less predictability than [a statute] that deals with the actual, not with an imaginary condition.'"  *Id.* at 598, 604 (brackets and quotations omitted).

Accordingly, *Johnson* dealt with "a statute that is in key respects *sui generis*" and did not purport to "alter the general rule that a defendant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge."  *Cook*, 970 F.3d at 876-77.  "[N]o court of appeals to consider the question has concluded" that *Johnson* "worked such a change."  *United States v. Hasson*, 26 F.4th 610, 620 (4th Cir. 2022).  *Johnson*'s discussion of whether a challenger must show that a law is vague in all of its applications speaks to the "*degree of vagueness* a law must exhibit to be found facially unconstitutional," but did not "undermine the rule" concerning *who* may advance a facial challenge.  *Id.* at 619 (emphasis added).  Indeed, since *Johnson* the Court has continued to apply the rule that a plaintiff whose conduct is clearly proscribed cannot raise a facial vagueness claim.  *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1151-52 (2017).

In any event, Section 922(g)(3) does not implicate the vagueness concerns identified in *Johnson*.  The statute does not gauge the riskiness of a defendant's conduct by comparison to hypothetical facts of an idealized case or call for courts to engage in

any abstract analysis. Instead, Section 922(g)(3) asks a court to apply the statutory prohibition to a defendant's own real-world conduct. *See United States v. Davis*, 139 S. Ct. 2319, 2327 (2019) ("[A] case-specific approach would avoid the vagueness problems that doomed the statute[ ] in *Johnson*"). And unlike "the ACCA's residual clause, there is no judicial history of courts struggling to appreciate what particular conduct Congress meant to reach." *Cook*, 970 F.3d at 877. Rather, courts have developed a consistent view of the statute's reach.

c.    Harris also invokes separation of powers concerns, arguing that unconstitutionally vague laws improperly "hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges." Br.40-41 (quoting *Davis*, 139 S. Ct. at 2325). But such concerns do not allow a defendant to facially challenge as vague a statute that clearly applies to him. And in any event, Section 922(g)(3) poses no risk that Congress abdicated "responsibility for defining crimes." *Davis*, 139 S. Ct. at 2325. Indeed, Harris's argument conflicts with an equally if not more compelling separation of powers principle: the obligation of courts, if possible, "to construe, not condemn, Congress' enactments." *Skilling*, 561 U.S. at 403. Cases "'paring down' federal statutes to avoid constitutional shoals are legion" and, in such cases, "the Court does not *legislate*, but instead *respects the legislature*, by preserving a statute through a limiting interpretation." *Id.* at 409 n.43.

2.     Even if Harris could facially challenge Section 922(g)(3) on vagueness grounds, the statute is not so indeterminate that it "fails to provide a person of ordinary intelligence fair notice of what is prohibited." *Williams*, 553 U.S. at 304.

As explained, this Court and others have had no difficulty ascertaining the core conduct Section 922(g)(3) prohibits.  Contrary to Harris's claim, the statute has a settled legal meaning: it requires a defendant to "have engaged in regular use" of drugs "over a period of time proximate to or contemporaneous with the possession of the firearm." *Augustin*, 376 F.3d at 138-39 (citing decisions of four other circuits).  Nor is Harris correct that Section 922(g)(3)'s prohibition is based on characteristics that are not objectively ascertainable.  Courts have expressed no difficulty determining whether, in a particular case, a defendant regularly used drugs contemporaneous with firearm possession.  *Id.* at 138-39 & n.6.  That determination is a "clear question[ ] of fact." *Williams*, 553 U.S. at 306.

Harris claims that the statute's use of the present tense and the noun "user" provide no clarity about the statute's reach, but this Court and others expressly have held otherwise.  This Court's construction of the statute, moreover, readily answers many of the hypotheticals Harris posits.  One who has used drugs in the past and only theoretically may use them again in the future—like the hypothetical music lover who last used marijuana at a concert two years ago (Br.45)—need not worry that his present-day firearm possession is prohibited.  *See Augustin*, 376 F.3d at 138 (statute does not cover use that is "remote in time or an isolated occurrence").  And Harris is wrong

(Br.45) that the statute provides "no temporal or spatial nexus between" drug use and firearm possession.[10]

Quoting an observation by an Eighth Circuit panel, this Court has suggested that Section 922(g)(3) "runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular drug use." *Augustin*, 376 F.3d at 138 (quoting *Turnbull*, 349 F.3d at 561). But the required temporal nexus flows naturally from the statute's use of the present tense and its focus on the defendant's status as an unlawful user. *Supra* at 31-32. Applying that language poses no vagueness concern. And even if that temporal nexus is considered a judicial gloss on the statute, "clarity at the requisite level may be supplied by judicial gloss."[11] *Lanier*, 520 U.S. at 266.

Harris premises his argument, in large part, on a claim (Br.34, 47) that courts have been unable "to define precisely" when a person becomes or ceases to be an unlawful user. But the possible existence of marginal cases in which it might be difficult

---

[10] Section 922(g)(3) is distinguishable from the "habitual drunkard" statute at issue in *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264 (4th Cir. 2019) (en banc), which Harris cites (Br.44). That statute defined an habitual drunkard simply as one who "has 'shown himself' to be an 'habitual drunkard,'" providing no standards for "determining how often or regularly an act must be performed." *Id.* at 273-75.

[11] Citing Justice Scalia's concurrence in *Skilling*, Harris claims (Br.46) that a judicial construction cannot save a statute from vagueness. But even Justice Scalia acknowledged that a statute must be upheld if it is *susceptible* to a particular interpretation that is not vague, 561 U.S. at 423-24 (Scalia, J., concurring)—an observation that accurately describes courts' efforts to construe Section 922(g)(3).

to determine whether a specific individual was or continued to be an unlawful drug user at the time of firearm possession does not mean that the statute is unconstitutionally vague. "[P]erfect clarity and precise guidance have never been required," *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989), and "the mere fact that close cases can be envisioned" does not "render[ ] a statute vague," *Williams*, 553 U.S. at 305-06; *see Johnson*, 576 U.S. at 604 ("[T]he law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree." (quotations omitted)). Applying a "qualitative standard" to a defendant's "real-world conduct," as Section 922(g)(3) does, generally does not render a statute vague. *Johnson*, 576 U.S. at 603-04. And, acknowledging that "enforcement requires the exercise of some degree of police judgment," there is no credible basis to conclude that any such discretion risks arbitrary enforcement of this statute.[12] *See Grayned v. City of Rockford*, 408 U.S. 104, 113-14 (1972).

---

[12] Citing *Rehaif v. United States*, 139 S. Ct. 2191 (2019), Harris claims (Br.44) that it is "a judgment call" whether a defendant who uses marijuana "knows he is an unlawful user within the meaning of [Section 922(g)(3)]." Under *Rehaif*, however, the government must prove that the defendant "knew he had the relevant status when he possessed" the firearm, 139 S. Ct. at 2194, which requires showing only that the defendant was "aware of the facts that met the statutory requirements" to make him "part of 'the relevant category of persons barred from possessing a firearm,'" *United States v. Sholley-Gonzalez*, 996 F.3d 887, 896 (8th Cir. 2021). The government need not show that the defendant knew his status made it unlawful for him to possess a gun. *See Boyd*, 999 F.3d at 182. Therefore, a defendant like the one Harris posits who knows he regularly and unlawfully uses marijuana knows all facts making him "part of 'the relevant category'" barred from gun possession. *Sholley-Gonzalez*, 996 F.3d at 896.

### III.    Harris's Guilty Plea Forecloses Any Sufficiency Challenge To His False Statement Convictions, Which Fails In Any Event

#### A.    Standard Of Review

A preserved sufficiency of the evidence claim is reviewed *de novo*, *Hoffert*, 949 F.3d at 790, but by pleading guilty and admitting the charge's factual elements, a defendant waives all nonjurisdictional claims, including sufficiency claims, *Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007) (per curiam); *United States v. McLaughlin*, 82 F. App'x 741, 743 (3d Cir. 2003).

#### B.    Discussion

1.    Harris contends (Br.52-59) that the evidence was insufficient to prove that he made false statements in connection with the acquisition of firearms, in violation of 18 U.S.C. § 922(a)(6).   But by pleading guilty to those offenses and forgoing a trial, Harris waived any sufficiency challenge.

A defendant's guilty plea is a waiver of all nonjurisdictional defects.  *Sobina*, 475 F.3d at 165.  A challenge to the sufficiency of the evidence is one such nonjurisdictional claim.  *See* 1A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 172 (5th ed. Apr. 2022 update).  Because a guilty plea "is an admission of all the elements of a formal criminal charge," by pleading guilty the defendant "waive[s] any challenge to the sufficiency of the evidence."  *McLaughlin*, 82 F. App'x at 743 (quotations omitted); *see also United States v. Viscome*, 144 F.3d 1365, 1370 (11th Cir. 1998); *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997); *United States v. Willis*, 992 F.2d 489,

490 (4th Cir. 1993). After pleading guilty a defendant cannot raise a claim "that would contradict th[ose] admissions" or "deny that he engaged in the conduct to which he admitted." *Class v. United States*, 138 S. Ct. 798, 805 (2018). Indeed, a defendant's guilty plea necessarily avoids a trial at which the government could present all evidence that might establish the defendant's guilt.

Here, at the change of plea hearing, Harris admitted the material facts the government proffered concerning his offenses, including representations concerning his unlawful marijuana use, and then pleaded guilty to each count of making false statements in connection with his firearms purchases. *See* Appx.198-204. Having pleaded guilty, Harris cannot now contend that the evidence at a hypothetical trial would not have been sufficient to prove his guilt.

Harris claims (Br.2) that by preserving his ability to appeal the denial of his motion to dismiss the indictment, he also preserved his ability to raise a sufficiency challenge. *See* Appx.209. As an initial matter, Harris did not advance a sufficiency-of-the-evidence challenge in that motion. With respect to the Section 922(a)(6) counts, he argued only that if Section 922(g)(3) was found unconstitutionally vague, his Section 922(a)(6) counts necessarily must be dismissed as well. Appx.50-51; *see also* Appx.145-46, 149, 155. Harris did not independently contend that even if Section 922(a)(6) is constitutionally valid, the evidence was *insufficient* to show that he in fact made knowingly false statements. *Cf. United States v. Joseph*, 730 F.3d 336, 340 (3d Cir. 2013) (distinguishing "issues" raised and specific "arguments" preserved for appeal).

44

But even if Harris had attempted to advance a sufficiency claim in his motion to dismiss, as the government pointed out below, *see* Appx.54, a motion to dismiss the indictment is not "a permissible vehicle for addressing the sufficiency of the government's evidence," *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000). Indeed, the scope of a court's review in response to a motion to dismiss the indictment is limited; when resolving the motion the court must "accept as true the factual allegations set forth in the indictment." *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) (brackets and quotations omitted). Until trial, the government does not "marshal and present" its evidence or have that evidence's "sufficiency tested," and this Court has declined to "approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be." *DeLaurentis*, 230 F.3d at 661. Because Harris could not have advanced a sufficiency claim in his motion to dismiss, he necessarily did not preserve such a claim by reserving the right to appeal the denial of that motion.[13]

2.    Even if this Court were inclined to entertain Harris's sufficiency claim notwithstanding his guilty plea and his failure to raise it below, the claim lacks merit.

---

[13] This Court has suggested that a pretrial motion to dismiss might be a permissible vehicle for addressing the sufficiency of the evidence in a rare case involving a "stipulated record" or "immunity issues." *DeLaurentis*, 230 F.3d at 660. Neither possible exception applies here. And while Harris contends (Br.58-59) that plain-error review should apply even if he did not preserve his sufficiency claim, the fact that such a claim is not cognizable in a pretrial motion to dismiss means that the district court could not have erred, let alone plainly erred, by not *sua sponte* considering such a claim in that posture.

a.    On sufficiency review, this Court views the evidence "in the light most favorable to the Government," credits "all reasonable inferences that support the verdict[ ]," *United States v. Perez*, 280 F.3d 318, 342 (3d Cir. 2002), and will overturn a verdict only when the record contains "no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt," *United States v. Lacerda*, 958 F.3d 196, 225 (3d Cir. 2020) (quotations omitted). "The burden on a defendant" raising a sufficiency challenge "is extremely high." *United States v. Smukler*, 991 F.3d 472, 491 (3d Cir. 2021) (quotations omitted).

18 U.S.C. § 922(a)(6) makes it unlawful for any person to "knowingly" make "any false or fictitious oral or written statement" "intended or likely to deceive" a firearms dealer concerning "any fact material to the lawfulness of the sale or other disposition of such firearm." The provision "helps make certain that a dealer will receive truthful information as to any matter relevant to a gun sale's legality." *Abramski v. United States*, 573 U.S. 169, 174 (2014). Applied here, the government must show that Harris understood himself to fall within the category of an "unlawful user," but knowingly represented otherwise. The government need not prove that Harris knew that his status rendered his possession of a firearm unlawful, or that he understood the precise reach of the statutory phrase "unlawful user" as to persons other than himself, because "ignorance of the law or a mistake of law is no defense to criminal prosecution." *Cheek v. United States*, 498 U.S. 192, 199 (1991); *see Bryan v. United States*, 524 U.S. 184, 192-93

(1998); *see, e.g.*, *United States v. Karani*, 984 F.3d 163, 177 (1st Cir. 2021) (applying proposition to Section 922(a)(6)).[14]

b.    Even based on the evidence presented in response to Harris's motion to dismiss, a rational factfinder could conclude that Harris knowingly made a false statement when he claimed not to be an unlawful user of marijuana.  Harris repeatedly admitted during his interview that he used marijuana several times during the three-week period when he purchased the firearms—including the day of his police interview, the evening before he purchased the third gun, and at least "every three days" during the preceding year.  Vol.III.4:50-5:20, 25:14-25:21.

A factfinder could further infer that Harris understood that his conduct qualified him as an "unlawful user," but knowingly represented otherwise.  Harris does not dispute (nor could he) that he was aware of his own drug use.  And the term "unlawful user," as explained, *supra* at 31-32, has a "common sense" meaning, *Purdy*, 264 F.3d at 812 (quotations omitted).  The ATF form, moreover, included a bolded warning that provided context—alerting Harris that possessing or using marijuana "remains unlawful under [F]ederal law."  Appx.199.  Harris admitted to smoking marijuana consistently throughout the period when he purchased the firearms—including admitting that he

---

[14] Because it criminalizes a knowingly false *statement*, Section 922(a)(6) requires a defendant to know that his specific statement (here, Harris's representation that he was not an "unlawful user" of marijuana) was false.  In a prosecution for unlawful *possession* of a firearm under Section 922(g), by contrast, the government need only show that the defendant knew the *facts* that brought him within the category prohibited from possessing firearms.  *See supra* at 42 n.12.

smoked the evening before his third firearm purchase and was at least planning to smoke on the day of that purchase.   Vol.III.25:14-25:21, 51:19-52:23.   Whatever conduct the term "unlawful user" might encompass in hypothetical circumstances, a rational factfinder could conclude that Harris understood that *his* conduct qualified and that he therefore made a knowingly false statement on the form when purchasing those firearms.

Arguing he misunderstood the phrase, Harris offers (Br.54-57) several alternative interpretations he claims to have held.   Had Harris proceeded to trial, he could have advanced these arguments before a jury to claim that he did not make the false statements knowingly.   But even assuming Harris's claimed interpretations are plausible, on sufficiency review, all reasonable inferences must be drawn in the government's favor.   *Perez*, 280 F.3d at 342.   And a factfinder could discount Harris's explanations.

Harris first contends that he understood "unlawful user" to mean "addicted to" (despite that phrase's separate inclusion on the form).   Harris did initially offer that interpretation during his interview, but once officers pointed to the "unlawful user" language Harris conceded that he was an "unlawful user" and admitted that his statements to the contrary were untruthful.   Vol.III.36:56-37:37, 42:00-42:04.   A factfinder could reject Harris's claimed misunderstanding.  *See United States v. Garcia*, 479 F.2d 322, 324 (5th Cir. 1973) (per curiam) (jury could find statements on ATF form knowingly false despite defendant's claimed misunderstanding); *United States v. Pearson*,

818 F. App'x 382, 384 (5th Cir. 2020) (per curiam) (jury could reject "significant evidence of a good faith lack of knowledge" to find statement on ATF form false).

Harris alternatively suggests that he thought "unlawful user" meant use "at the time of" or "on the day of" purchase. Of course, Harris admitted to at least planning to use marijuana on the very day he purchased the third gun, and to actually using marijuana the evening before. Regardless, in the statement Harris cites he suggested that being an unlawful user might depend on whether "in the moment" "*I am using* or not." Vol.III.37:37–37:54. Consistent with his admission to being an unlawful user, a factfinder reasonably could interpret Harris's statement as not confined to using on the precise day or time of day when the purchase was made. And, contrary to Harris's claim, the officers' correct explanation that a dealer could not have sold him the gun had he answered affirmatively did not suggest that one qualifies as an unlawful user only if he uses marijuana on the day of purchase. *Id.* at 40:43-40:59.

Citing two out-of-circuit cases, Harris claims (Br.53-54) that a lack of knowledge of the precise reach of the statutory term "unlawful user" is a defense. Those cases are inapt, however, because the defendant in each was charged with making false statements specifically about compliance with the law or the status of particular legal proceedings. In *United States v. Squires*, 440 F.2d 859 (2d Cir. 1971), the defendant signed a prior version of ATF Form 4473 which, at that time, asked a purchaser to certify that he was not prohibited by "the provisions of Chapter 44 of Title 18, United States Code, or Title VII of the Omnibus Crime Control and Safe Streets Act of 1968" from receiving

a firearm. *Id.* at 862. Because the defendant was asked to represent his compliance with the statute, the court explained, "the maxim that ignorance of the law is no defense has no relevance." *Id.* at 863-65 (quotations omitted). The court recognized, however, that a recently-promulgated version of the form—which, similar to the version Harris signed, required purchasers to make particular factual representations—would "in large part eliminate[ ]" any "ignorance of the law" defense. *Id.* at 863-64 & nn.7, 10. And in *United States v. Chapman*, 7 F.3d 66 (5th Cir. 1993), a defendant who purchased a firearm while his state criminal case was on appeal was charged with falsely representing that he was not under indictment. As the court explained, because the "charged falsity rest[ed] on [the] defendant's untrue statement of his legal status," ignorance of the law was, "[i]n a practical sense," a defense. *Id.* at 68. But here, unlike in *Squires* and *Chapman*, Harris was asked to represent his status as a factual matter—not to the posture of particular legal proceedings or his statutory compliance.

At best, Harris's description of the circumstances is subject to conflicting interpretations. Where a factfinder could "chose to reject [the defendant's] proffered interpretation and accept the government's," a sufficiency challenge fails. *United States v. Voigt*, 89 F.3d 1050, 1091 (3d Cir. 1996).[15]

---

[15] Harris suggests (Br.57 n.37) that the evidence was insufficient absent corroboration of his incriminating statements. Corroboration is necessary only to "establish the trustworthiness of the [accused's] statement," and need not be "sufficient, independent of the statement," to establish the crime's elements. *United States v. Wilson*, 436 F.2d 122, 124 (3d Cir. 1971). Had this case proceeded to trial the government could have

## CONCLUSION

For the foregoing reasons, district court's judgment should be affirmed.

June 10, 2022                          Respectfully submitted,

CINDY K. CHUNG                         KENNETH A. POLITE, JR.
United States Attorney                 Assistant Attorney General
Western District of Pennsylvania

                                       LISA H. MILLER
LAURA S. IRWIN                         Deputy Assistant Attorney General
Chief, Appellate Section
Western District of Pennsylvania       /s/ Andrew C. Noll
                                       ANDREW C. NOLL
ADAM N. HALLOWELL                      Criminal Division, Appellate Section
Assistant United States Attorney       U.S. Department of Justice
Western District of Pennsylvania       950 Pennsylvania Avenue, N.W.
                                       Washington, DC 20530
                                       (202) 307-1982
                                       Andrew.Noll@usdoj.gov

---

introduced additional evidence of Harris's marijuana use or, alternatively, buttressed the trustworthiness of Harris's incriminatory statements as a whole.

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 12,999 words (excluding the parts of the brief exempted by Rule 32(f)).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced, 14-point serif typeface using Microsoft Word.

3.     The electronic version of the government's brief was prepared on a computer automatically protected by a continuously-updated version of CrowdStrike Windows Sensor 6.38.15205.0, and no virus was detected.

4.     The electronic version of the government's brief is an exact copy of the paper copies filed with the Court.

/s/ Andrew C. Noll
Andrew C. Noll

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2022, I electronically filed the foregoing Answering Brief for the United States with the Clerk of the Court of the U.S. Court of Appeals for the Third Circuit using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

/s/ Andrew C. Noll
Andrew C. Noll