IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 21-3031

UNITED STATES OF AMERICA,
Appellee

v.

ERIK MATTHEW HARRIS,
Appellant

Appeal from a judgment entered
in the United States District Court for the
Western District of Pennsylvania at No. 2:19-cr-00313

SUPPLEMENTAL LETTER BRIEF FOR APPELLANT
ADDRESSING *UNITED STATES v. HEMANI*

ELISA A. LONG
Federal Public Defender

RENEE PIETROPAOLO
Assistant Federal Public Defender

Federal Public Defender for the
Western District of Pennsylvania
1001 Liberty Avenue, Suite 1500
Pittsburgh, PA 15222

(412) 644-6565

# TABLE OF AUTHORITIES

## Cases

*Lyng v. Northwest Indian Cemetery Protective Ass'n,*
　485 U.S. 439 (1988) ..................................................................................................5

*United States v. Alston,*
　Appeal No. 23-4705 (4th Cir. July 13, 2026) ....................................................5

*United States v. Baird,*
　218 F.3d 221 (3d Cir. 2000) ..................................................................................1

*United States v. Daniels,*
　124 F.4th 967 (5th Cir. 2025), cert. denied, June 29, 2026.................................. 4-5

*United States v. Harris,*
　144 F.4th 154 (3d Cir. 2025), cert. granted, judgment vacated by
　*Harris v. United States,* No. 25-372 (June 29, 2026)................................. 1, 3, 5

*United States v. Hemani,*
　608 U.S. ___, 146 S. Ct. 1677 (2026)........................................................ 1-5

*United States v. Rahimi,*
　602 U.S. 680 (2024) ..................................................................................................4

*United States v. Sam,*
　2025 WL 752543 (5th Cir. 2025), cert. denied, June 29, 2026.................................. 5

*Wolford v. Lopez,*
　609 U.S. ___, 2026 WL 1825723 (2026) ..............................................................2, 4

## Statutes and Constitutional Provisions

U.S. Const. Amend. II ........................................................................................ 1, 2, 5

18 U.S.C. § 922(a)(6) ..............................................................................................1

18 U.S.C. § 922(g)(3) ........................................................................................ 1-5

18 U.S.C. § 922(g)(8).............................................................................................4

**Argument**

*Hemani* resolves this appeal. The Supreme Court held that 922(g)(3) violates the Second Amendment as applied to a regular user of marijuana on materially indistinguishable facts: Hemani used marijuana "about every other day"; Mr. Harris used it every three days. The Court concluded that the historical regulations identified by the government targeted different people, "for different purposes, and operated in different ways," and therefore were not "relevantly similar" to 922(g)(3), which automatically disarms unlawful users of any controlled substance. *United States v. Hemani*, 146 S. Ct. 1677, 1686-87, 1694 (2026). Because the government here advanced the same theory and relied on historical analogues *Hemani* rejected, Mr. Harris is entitled to the same relief: This Court should reverse the order denying his motion to dismiss and remand for proceedings consistent with that determination.

Alternatively, the Court may vacate the judgment and remand for further proceedings in the district court consistent with *Hemani*. The Panel initially determined the district court should "get the first crack at whether 922(g)(3) is constitutional as applied to Harris under [the] proper framework," *United States v. Harris*, 144 F.4th 154, 165 (3d Cir. 2025), *cert. granted*, judgment vacated by *Harris v. United States*, S. Ct. No. 25-372 (June 29, 2026); *Hemani* alters that framework, and the Court may again give the district court first crack at applying it.[1]

**Hemani confirms 922(g)(3) is unconstitutional as applied to Erik Harris.**

To begin, *Hemani* confirms that 922(g)(3) burdens conduct protected by the Second Amendment's plain text and is therefore "presumptively unconstitutional." *Hemani*, 146 S. Ct. at 1686. To overcome that presumption, the government must identify historical regulations that imposed comparable burdens on the keeping or bearing of arms for comparable reasons—the "how" and "why" of the historical analogue and modern law must be "close enough" to enable this Court to "infer" that

---

[1] Mr. Harris entered a conditional plea, preserving his right to appeal the denial of his motion to dismiss. C.A. App. 209. That motion sought dismissal of the indictment "in its entirety," arguing that 922(g)(3) violates the Second Amendment as applied and is unconstitutionally vague. C.A. App. 32-51, 134-46, 148-72. Mr. Harris further attacked the related false statement counts as rising or falling with the constitutionality of 922(g)(3). If 922(g)(3) is unconstitutional as applied to him, then his statement as to drug use was neither material to the sale nor knowingly false. *See* C.A. App. 50-51, 134-35, 145-46, 155; 3d Cir. Doc. 43 at 27-29 & Doc. 77. The plea agreement provides that if Mr. Harris prevails on appeal, "he may withdraw his plea of guilty." C.A. App. 209. Thus, if this Court (or the district court on remand) holds 922(g)(3) is unconstitutional as applied to Mr. Harris, the plea agreement entitles him to withdraw his guilty plea to both the 922(g)(3) and 922(a)(6) counts. *See United States v. Baird*, 218 F.3d 221, 229 (3d Cir. 2000) (plea agreement text must be strictly construed against the government as drafter with tremendous bargaining power).

"the restriction imposed by the modern law is likewise consistent" with the Second Amendment right. *Wolford v. Lopez*, 609 U.S. ___, 2026 WL 1825723, at *6 (2026); *Hemani*, 146 S. Ct. at 1686-89.

Section 922(g)(3), as the government construed it, "automatically divests an individual of his constitutional right to bear arms the moment he becomes an unlawful user and until he ends his drug use." *Hemani,* 146 S. Ct. 1686, 1691-92. To justify that restriction, the government relied exclusively on vagrancy, civil-commitment, and surety laws, i.e., "habitual drunkard" laws, arguing they demonstrated a tradition of disarming regular users of intoxicants including when they were not intoxicated. *Id.*, 146 S. Ct. at 1686, 1694; Hemani U.S. Br. at 18.[2]

The *Hemani* Court flatly rejected the government's historical case. It held that the historical laws identified by the government "differ[ed] dramatically from 922(g)(3)'s unlawful user provision on every single metric": "They targeted different kinds of people," "for different purposes," and "operated in different ways." *Id.*, 146 S. Ct. at 1686-87, 1694 (explaining "the more a modern law diverges from traditional laws in purpose and operation, the less likely it is to survive review.").[3]

Most fundamentally, the historical laws targeted "habitual drunkards"—those who "for any considerable" time were "intoxicated to such a degree as to deprive [them] of [their] ordinary reasoning faculties"—while 922(g)(3) targets regular users. *Hemani*, 146 S. Ct. at 1687-88. The historical laws targeted habitual drunkards not because they regularly used intoxicants or sometimes used them to excess but because their drinking rendered them incapable of managing their affairs. *Id.*, 1688-89. By contrast, 922(g)(3) "automatically disarms anyone who regularly uses any amount of any controlled substance for anything other than its 'prescribed purpose.'" *Id.*, 1689.

Additionally, the historical laws did not target firearm misuse—the "why." Vagrancy laws targeted those who failed to meet societal expectations of work; civil-

---

[2] Notably in *Hemani*, the government chose not to rely on surety-of-the peace regulations or regulations targeting the mentally ill. And the government acknowledged historical laws prohibiting certain people from *carrying* or *using* firearms *while* intoxicated could not serve as analogues for 922(g)(3), which automatically disarms anyone who regularly uses any controlled substance for other than its prescribed purpose. *See Hemani* U.S. Br. 4, 37-39. *Hemani* confirms those are not suitable analogues, as Mr. Harris has explained. *See* Harris Reply Br. 9-13; 3d Cir. Doc. 53 at 5-7, Doc. 57 at 3-10, Doc. 69 at 5-9, Doc. 89 at 1-5.

[3] The *Wolford* Court likewise rejected the state's analogues because they differed materially in purpose (why) and operation (how), explaining "[t]he gap" between the historical and modern laws "is just too wide." *Wolford,* 2026 WL 1825723, at *12-*13. *Hemani* and *Wolford* demonstrate the rigor the "relevantly similar" inquiry demands. *See Wolford,* 2026 WL 1825723, at *7 (characterizing "relevantly similar" test as "far more disciplined" than any interest-balancing).

2

commitment laws targeted those who "waste[d] their estates by excessive drinking" to protect families from financial ruin while promoting reform; and surety of good behavior laws sought to protect the community from scandals against good morals. *Hemani*, 146 S. Ct. at 1689-91. As *Hemani* concluded, these laws "had little to do with protecting the public from categorically violent and unusually dangerous persons," the (dubious) purpose the government ascribed to 922(g)(3). *Id.*, 1689, 1692-93.

And the historical laws all operated differently from 922(g)(3)—the "how." As *Hemani* emphasized, vagrancy, civil-commitment, and surety laws "provided some form of process *before* an individual lost any of his liberties, even temporarily"—whether through conviction, judicial commitment, or proceedings before a justice of the peace or comparable officer. *Hemani*, 146 S. Ct. at 1691 (emphasis added). By contrast, 922(g)(3), as the government construed it, "automatically divests an individual of his constitutional right to bear arms the moment he becomes an unlawful user and until he ends his drug use—all without any pre-deprivation process." *Id.,* 1691-92. The *Hemani* Court rejected the government's reliance on the "full-dress criminal trial" an unlawful user would receive *after* possessing a firearm because later process did not cure the absence of process before the right was lost. *Id.*

Because the historical regulations do not evidence a tradition of disarming regular users of intoxicants, a straightforward application of *Hemani* compels the conclusion that 922(g)(3) is unconstitutional as applied to a person like Mr. Harris, who uses marijuana a few times a week. *Id.*, 1687, 1694.

**_Hemani_ requires reversal.**

Like *Hemani*, the government charged Mr. Harris as an "unlawful user," not addict, based solely on his interview admission to using marijuana "every three days." *Hemani,* 146 S. Ct. at 1684. *See* 3d Cir. Doc. 89 at 1 & n.1. *Hemani's* ruling that 922(g)(3) is unconstitutional as applied to a person whose prosecution was based on an interview admission to using marijuana a few times a week and who was not intoxicated at the charged time of possession controls; Section 922(g)(3) is unconstitutional as applied to Mr. Harris. *See Hemani*, 146 S. Ct. at 1693.

Because the Panel's constitutional analysis rested on historical analogues the Supreme Court has now rejected, explicitly or implicitly, its reasoning cannot stand. The Panel determined that vagrancy, civil-commitment, and surety laws were "relevantly similar" to 922(g)(3). *See Harris*, 144 F.4th at 158-160. *Hemani* categorically rejected that same historical case: "The gap between the [habitual drunkard] analogues and [the modern law] is just too wide." *See Wolford*, 2026 WL 1825723, at *12-*13.

The Panel's assessment of historical regulations restricting the liberties of the mentally ill likewise cannot survive *Hemani. See Harris*, 144 F.4th at 160-61. The *Hemani* Court grouped laws allowing appointment of guardians or temporary confinement of those judged mentally incompetent with the habitual drunkard laws it rejected as not relevantly similar to 922(g)(3). *Hemani*, 146 S. Ct. at 1690 n.5. Regulations of the mentally ill likewise targeted different people, for different reasons,

3

through different means. *See* 3d Cir. Doc. 89 at 5 & Doc. 69 at 5-9. Importantly, those regulations, unlike 922(g)(3), involved some form of pre-deprivation process—process the *Hemani* Court deemed constitutionally significant.

Finally, *Hemani* also forecloses reliance on surety-of-the peace regulations. The Court observed that the government itself had acknowledged surety of peace analogues did not form the tradition underlying 922(g)(3) and explained the government's choice to discount those laws was correct. *Hemani*, 146 S. Ct. at 1691.[4]

**The Panel should not remand for factfinding.**

The Court characterized the *Hemani* opinion as "narrow," *id.*, 1693, but that opinion squarely resolves this case. *Hemani* rejected the historical justification the government advanced to disarm Mr. Harris, *see* 3d Cir. Doc. 88 at 2-5. *Hemani*, 146 S. Ct. at 1693-94. On this record, there is no reason to remand for factfinding.

The government chose to prosecute this case on the same theory rejected in *Hemani*—a claimed historical tradition of disarming regular users of intoxicants. Like *Hemani*, the firearm possession charged in the indictment is unconnected to any marijuana use and rested solely on statements about regular use obtained during a police interview.[5] Indeed, the government relied on regular use in opposing any requirement for an individualized "dangerous" determination both before this Court, *see* 3d Cir. Doc. 55 at 2-3 (government arguing "remand is unnecessary" based on purported tradition of disarming users), and the Supreme Court, *see* Hemani U.S. Br. 32-33, 39-40 (characterizing as "wrong" the Panel's call for an individualized showing that a person's drug use increased the risk he could not handle guns safely); Hemani U.S. Reply Br. 4 (calling *Harris's* remand framework "unworkable"). *See also* Harris U.S. Mem. 1 (urging Court to hold *Harris* for *Hemani* and waiving further response).

The government should be held to its litigation choices.[6] And Mr. Harris should be afforded same relief as Hemani and those similarly situated. *See, e.g.*, *United States v.*

---

[4] *United States v. Rahimi* analogized surety-of-the-peace laws to 922(g)(8). Because both temporarily disarmed those judicially determined "to pose a credible threat to the physical safety of another," 602 U.S. 680, 698-700 (2024), the "how" and "why" were "close enough" to allow the Court to "infer" the restriction imposed by the modern law is consistent with the Second Amendment. *See Wolford*, 2026 WL 1825723, at *6.

[5] The government did not claim Mr. Harris was intoxicated at the charged time of possession. It urged the district court to resolve the motion to dismiss on the "undisputed facts":  Harris was not an addict but used marijuana every three days. C.A. App. 51, 61, 161-62, 167. *See* Harris Ptn. for Cert. at 6-8.

[6] The Court left open the possibility that the government may charge 922(g)(3) in other circumstances. But here, as in *Hemani*, the government chose not to rely on an effort to ban firearm possession by someone who is "presently intoxicated" or to bring "individualized proof" Mr. Harris's "use of marijuana" "renders him a danger." Those issues are therefore "not before [this Court]." *Hemani*, 146 S. Ct. at 1693.

4

*Daniels*, 124 F.4th 967 (5th Cir. 2025), *cert. denied*, June 29, 2026 (the government dismissed the indictment rather than pursue re-prosecution); *United States v. Alston*, Appeal No. 23-4705 (4th Cir. July 13, 2026) (granting government's motion to withdraw appeal from an order granting daily marijuana user's as-applied challenge to 922(g)(3)); *United States v. Sam,* 2025 WL 752543 (5th Cir. 2025) (granting regular marijuana user's as-applied challenge to 922(g)(3)), *cert. denied*, June 29, 2026.

Moreover, the Panel's remand framework—which is untethered to historical analogues to 922(g)(3)—rests on a premise called into question by *Hemani.* The Panel would have remanded for an assessment whether Mr. Harris's regular "marijuana use increased the risk that he could not handle guns safely." *Harris*, 144 F.4th at 165-66. The *Hemani* Court required no such determination as to the defendant in that case. Indeed, the Court was skeptical that 922(g)(3)'s purpose is to disarm individuals who are violent and unusually dangerous. *Hemani*, 146 S. Ct. at 1692-93. As the Court noted, changes to marijuana scheduling, policies curtailing federal prosecution of marijuana users, widespread state legalization, and studies showing that regular marijuana use is more common than alcohol use undermine the government's position that regular marijuana users are "categorically violent and dangerous." *Hemani*, 146 S. Ct. at 1692-93. Thus, even if there is a tradition of disarming those who pose a threat to the physical safety of others, 922(g)(3)—as applied to Mr. Harris—is not consistent with that tradition.

**Because the Court can resolve this appeal on Second Amendment grounds, it need not reach the alternative vagueness challenge.**

The Panel held that 922(g)(3) was not vague as applied to Mr. Harris because he admitted using marijuana several times a week around the time he purchased the firearms, including the night before one purchase. *Harris*, 144 F.4th at 167. But *Hemani* holds 922(g)(3) violates the Second Amendment as applied to materially identical conduct—regular marijuana use proximate to firearms possession. Vacating Mr. Harris's conviction on Second Amendment grounds leaves no occasion for this Court to decide whether the statute is also unconstitutionally vague as applied to him. *See generally Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445 (1988) (courts should avoid reaching constitutional questions where they need not do so to resolve the case). *See also United States v. Hemani*, Appeal No. 24-40137, 2025 WL 354982 (5th Cir. 2025) (summarily affirming dismissal of 922(g)(3) indictment on Second Amendment grounds without reaching preserved vagueness challenge).

* * *

The Supreme Court has answered the question presented here. The government prosecuted Mr. Harris on the same theory, based on materially indistinguishable facts, and defended § 922(g)(3) with the same historical analogues rejected in *Hemani.* Because *Hemani* establishes that § 922(g)(3) is unconstitutional as applied to Mr. Harris, this Court should reverse the order denying his motion to dismiss and remand with instructions to dismiss the indictment.

5

Respectfully submitted,
*/s/ Renee Pietropaolo*
Renee Pietropaolo
Assistant Federal Public Defender

6

# CERTIFICATE OF COMPLIANCE

This letter brief complies with the type-volume limitation in the Court's June 29, 2026 order because it consists of five single-spaced pages, excluding the parts of the brief exempted under Fed. R. App. P. 32(f).

This letter brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5), (6), because it has been prepared in a proportionally spaced typeface using Word for Microsoft Office 365 in font size 14, type style Garamond.

This letter brief also complies with 3d Circuit L.A.R. 31.1 (2011) because the text of the electronic brief is identical to the text in the paper copies. Further, the electronic version of the attached brief was automatically scanned by Trend Micro antivirus software version 14.0 and found to contain no known viruses.

*/s/ Renee Pietropaolo*
Renee Pietropaolo
Assistant Federal Public Defender

July 14, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Supplemental Letter Brief for Appellant pursuant to the Court's Order dated June 29, 2026, using the Third Circuit Court of Appeals' Electronic Case Filing (CM/ECF) system. I also certify that I served copies upon Filing User Andrew C. Noll, through the appellate CM/ECF system.

/s/ *Renee Pietropaolo*
Renee Pietropaolo
Assistant Federal Public Defender

July 14, 2026